## WELLS, FARGO & Co. *v.* NORTHERN PAC. RY. Co.

*(Circuit Court, D. Oregon.* November 19, 1884.)

1. EXPRESS COMPANY—RIGHT OF WELLS, FARGO & Co. TO DO BUSINESS IN WASHINGTON TERRITORY—REV. ST. U. S. §§ 1924, 1889.

    A corporation, created under a special act of Colorado, whereby it is authorized to engage in the express business, and to draw drafts and bills of exchange, or sell and buy the same, in the course of such business, is not prohibited (Rev. St. U. S. §§ 1924, 1889) from carrying on such business in Washington Territory on the ground that it is a banking corporation or that it was not organized under a general incorporation law.

2. SAME—"INDUSTRIAL PURSUITS."

    The express business is an "industrial pursuit" within the meaning of Rev. St. U. S. § 1889.

3. SAME—EXPRESS FACILITIES—DUTY OF RAILROAD COMPANY—COMPLIANCE WITH STATE LAWS BY EXPRESS COMPANY.

    It would seem that a railroad company cannot refuse express facilities to an express company on the ground that it has not complied with the laws of the states or territories in which it demands such facilities.

4. SAME—INTERSTATE COMMERCE.

    An express company that is engaged in transportation from one state to another, is engaged in an interstate commerce, and no territory or state can impose upon it any conditions by way of license, or otherwise, to engage in this commerce by passing through its limits, but such company will have no right to do a mere local business within a state or territory without complying with the territorial or state law.

5. SAME—NORTHERN PACIFIC RAILROAD COMPANY—MANDATORY INJUNCTION.

    *Wells, Fargo & Co.* v. *Oregon Ry. & Nav. Co.* 8 Sawy. 600, S. C. 15 FED. REP. 561, followed as to the duty of a railroad company to furnish express facilities to an express company, and a mandatory injunction granted, requiring the Northern Pacific Railroad Company to furnish such facilities to Wells, Fargo & Co. on its road, from Oregon to St. Paul, Minnesota, and connecting lines, as it furnishes other express companies, on condition that Wells, Fargo & Co. execute a bond for $25,000 to pay all costs, charges, and damages which the railroad company may incur.

In Equity. Suit for injunction.

This cause came on to be heard on the bill and answer thereto, and the affidavits of plaintiff and defendant, upon motion for a preliminary injunction to compel the defendant to furnish the plaintiff express facilities over its lines of railway northward between Portland and Tacoma, and eastward between Wallula junction and St. Paul.

*M. W. Fechheimer*, for plaintiff.

*James McNaught* and *C. B. Bellinger*, for defendant.

DEADY, J., *(orally.)* This is a suit brought to restrain or constrain the defendant to furnish the plaintiff with express facilities upon its railway from Portland to Tacoma, and from Wallula junction to St. Paul, and branches between those points. It is brought by Wells, Fargo & Co., a corporation organized by a special act of the territory of Colorado in 1866, whereby it is authorized to engage in the express business, and to draw drafts and bills of exchange, or sell or buy the same in the course of such business. The act itself, section 1, provides:

"That Ben Holladay, David Street, Bela M. Hughes, S. L. M. Barlow, and John E. Russell, and their associates, successors, and assigns, be and they are hereby declared to be a body corporate and politic, by the name of the Holladay Overland Mail & Express Company, and by such name shall have continual succession, with power to sue and be sued, plead and be impleaded, complain and defend in any court of law or equity; to adopt and use a common seal, and change the same; to purchase, hold, mortgage, and convey any estate or property, real or personal, for the use and benefit of said corporation; to take, to hold, and dispose of any mortgage on real or personal estate; to establish, maintain, and operate any express, stage, or passenger, or transportation route or routes, by land or water, for the conveyance of persons, mail, or property of any kind, from, to and between any place or places in Colorado territory, and any place or places beyond the limits thereof; to erect, or hire and maintain warehouses or other structures for the safe keeping of goods, wares, merchandise, or other chattels or effects, and the transaction of business; and for the purpose of facilitating exchange between the several places at which said corporation may transact business, the said company shall have power to draw, accept, indorse, guaranty, buy, sell, and negotiate drafts and bills of exchange, inland and foreign; to receive coin, money, silver, and gold, in any form or other, and any kind of valuables on deposit at its offices, and make orders for the payment and delivery of the same, or an equivalent, at any other place whatsoever; to buy, sell, and dispose of gold and silver coin and bullion, gold-dust, money, and securities for money, and to do a general exchange and collection business; and to invest surplus or unemployed funds in bonds or notes, secured by mortgage on real estate, stocks of the government of the United States, of any of the United States, or otherwise, as the board of directors may designate."

The bill alleges that this plaintiff has been in the express business in Oregon, Washington, Idaho, Montana, and places to the eastward thereof, for many years; that the defendant is furnishing express facilities to the plaintiff over its road from Kalama northward, and from Wallula junction eastward to Missoula; but that it has refused, and still refuses, to furnish express facilities over its road to the plaintiff from Portland to Kalama, and from Missoula eastward. The answer of the defendant substantially admits the facts upon which the plaintiff grounds its right; that is, the incorporation of the plaintiff, its express business, the ownership and operation of the Northern Pacific Railway and its branch lines by the defendant, and the refusal on the part of the defendant to furnish express facilities to the plaintiff within or between the points named. But, as a defense or reason for this refusal, the defendant sets up several matters; and, first, it says plaintiff is a banking corporation, and by section 1924 of the Revised Statutes it is prohibited from doing business in Washington Territory, and therefore, as an express company, cannot come into that territory; nor can it rightfully or lawfully demand any privileges or facilities or conveniences from the defendant over its railway lines within that territory. Section 1924, of the Revised Statutes referred to, is section 6 of the act of March 2, 1853, (10 St. 172,) organizing the territory of Washington, and it provides:

"The legislative assembly of Washington shall have no power to incorporate a bank, or any institution, with banking powers, or to borrow money in the

rame of the territory, or to pledge the faith of the people of the same for any loan whatever, directly or indirectly. No charter, granting any privileges of making, issuing, or putting into circulation any notes or bills in the likeness of bank-notes, or any bonds, scrip, drafts, bills of exchange, or obligations, or granting banking powers or privileges, shall be passed by the legislative assembly; nor shall the establishment of any branch or agency of any such corporation, derived from other authority, be allowed in the territory; nor shall the legislative assembly authorize the issue of any obligation, scrip, or evidence of debt, by the territory, in any mode or manner whatever, except certificates for service to the territory."

In Rapalje & L. Law Dict., under the word "Bank," occurs this definition of a bank:

"(1) A place for the deposit of money. (2) An association or corporation whose business it is to receive money on deposit, cash checks or drafts, discount commercial paper, make loans, and issue promissory notes payable to bearer, called 'bank-notes.' (3) The building, apartment, or office where such business is transacted. Banks are of three kinds: banks of deposit, which include savings banks, and all others which receive money on deposit; banks of discount, being those which loan money on collateral or by means of discounts of commercial paper; and banks of circulation, which issue bank-notes payable to bearer. But the same bank generally performs all these several operations."

Now, I think it is too plain for argument that the plaintiff is not a bank or a banking corporation in any of these senses; though it is undoubtedly true that it possesses some of the powers or facilities which may be used by a bank, and are commonly used by banks in the transaction of business; still, banking is not the object of its incorporation. The object of its incorporation is the transportation of packages, including money, from place to place; and, so far as money is concerned, this is also done at this day by telegraph, bills of exchange, drafts, and otherwise. It may be very convenient and very proper for Wells, Fargo & Co. to receive $1,000 in gold to be transmitted to New York, and to do so by giving a draft on New York, or by making a telegraphic transfer, and then transporting the coin to New York at its convenience, or keeping it here, if that should be more convenient, for the time being. I do not think I can better dispose of this objection than in the language of Mr. Justice GREENE, in the able and exhaustive opinion (1884) delivered by him in the case between these same parties in Washington Territory. He says:

"It has been stated in argument that plaintiff is doing a purely banking business at different points in the United States, notably at San Francisco and New York city. Possibly, it may be doing what is beyond its lawful powers. The prime object of its pursuit, according to its charter, is not banking, nor the doing of those things wherein banks and bankers are principally or peculiarly engaged, but the reception, transmission, and delivery of parcels and values, and executing other commissions. For a person whose proper vocation is not that of a banker to do for himself, solely in furtherance of his own particular vocation, the things that a banker does, is not 'banking,' nor is it, as it seems to me, the exercise of 'banking powers.' If plaintiff, under its charter, does things that banks do, it does them as ancillary to its main business, just as a merchant incidentally, in his own behalf,

in his mercantile transactions, may do every one of those things which plaintiff is empowered to do, and yet do them without being in name or fact an expressman or a banker. Not for the purpose of doing a banking business in any phase, but 'for the purpose of facilitating exchange between the several places at which said corporation may transact business,' are the particular powers of plaintiff given.

"For the safe and convenient transmission of value, and for no other purpose, a token of value is taken from a sender at one place, and a corresponding token is produced to a recipient at another place. It is all the same as if a parcel of goods to be sent were received at one end of a line of transportation, and a like or equivalent parcel were, by consent or stipulation of the shipper, to be delivered at the other end. A business consisting of such details is not ' banking,' nor are powers limited to carrying it on ' banking powers.' In one department or another of banking the receiving of deposits, or the buying and selling of gold and silver and mercantile paper and securities, or the drawing, paying, and collecting mercantile paper, is the principal thing, and the exchange of values between localities, thereby sometimes effected, is subsidiary or accidental; but in this part of the express business the principal thing is the transfer of value from place to place, and the buying, selling, drawing, paying, collecting, depositing, and receiving are all accessory. Every milling, or mining, or other productive corporation, has to do some or all of these things for the convenience of itself in its own business, to a greater or less extent, and if it could not, would be cramped almost or quite to death. Between such a corporation and plaintiff there is a difference arising from the fact that the requirements of plaintiff's business make the doing of such things a matter of great convenience and frequency, and so prominent and important as to deserve especial mention and definition in the charter. But in the particular now under discussion, the two are otherwise alike.

"I do not understand that congress demands or contemplates that section 1924 be so applied as to bar out from our territory any foreign corporations except those who carry on a business in which the things essential to banking are done for banking's sake, or, in other words, as the main, as distinct from an incidental and ancillary, affair. Only such are banks, or have the power to do banking. Wells, Fargo & Co. is not, in my opinion, though it may be in its own, a corporation of that description. See *People* v. *River Raisin, etc., R. Co.* 12 Mich. 389. Looking further at this section, the intent of it seems to be, not to exclude a corporation simply because so fortunate or unfortunate as to be clothed with banking powers, or powers used in banking, even so as to be exercised in chief, but rather to exclude one exercising or claiming to exercise them in fact. The section seems to be leveled, not at abstract or dormant power, but at actual deed or endeavor. In the record before me there is nothing to show that plaintiff is doing or undertaking anything unlawful. It is not under compulsion of any absolute necessity of its express business to exercise the interdicted powers. Values can be expressed between distant places without traffic in precious metals or valuable paper. If such traffic be unlawful for plaintiff, it is freely, though perhaps not conveniently, separable from plaintiff's business. And, although one may say that it is to be presumed that plaintiff is doing all that its charter purports to authorize, and that is convenient to be done, yet the stronger and overcoming presumption is that it is not disobeying any law, organic or otherwise."

I think myself that, apart from the question as to whether this corporation can be abstractly called a "bank" by virtue of its act of incorporation and powers conferred by that act, the only question, if

there be any question, is, "What are the powers it is exercising in this territory, and what is the business in which it is engaged?" It may have, in my judgment, many interdicted powers, or more than one, considered with reference to the locality of Washington Territory; but if it goes there, exercising only the powers which are permitted as to the interdicted ones, they do not exist. Whoever alleges it is exercising, or attempting to exercise, interdicted powers, and, therefore, is unlawfully in that territory, must prove the allegation to be true. There is no presumption, as Mr. Justice GREENE says, that "it is there, violating or intending to violate the laws of the territory."

Another objection is made to the relief demanded in this bill, on the ground of the inability of the plaintiff to exercise the powers claimed by it in Washington Territory; and that is, that it is created by a special act of Colorado. This objection is founded upon section 1889 of the Revised Statutes, which is applicable to all territories, and reads as follows:

"The legislative assemblies of the several territories shall not grant private charters or especial privileges; but they may, by general incorporation acts, permit persons to associate themselves together as bodies corporate for mining, manufacturing, and other industrial pursuits, or the construction or operation of railroads, wagon roads, irrigating ditches, and the colonization and improvement of lands in connection therewith, or for colleges, seminaries, churches, libraries, or any other benevolent, charitable, or scientific association."

Now, it is argued, first, that because a corporation cannot be organized in Washington Territory by a special act of the legislature, but must be organized under the general law, therefore a corporation existing before this restriction was made, under a special act of a sister state or territory, cannot come into that territory and exercise the powers, although they are in no way excluded by the law of the land, or contrary to the public policy. The ground is that it is not brought into being in the peculiar or particular way in which the general law now requires corporations to be formed in Washington Territory; but I cannot see that there is anything in this objection. There is nothing in this section (1889) to prevent any corporation exercising its powers in Washington Territory in particular cases. Everybody who is familiar at all with the history of the growth and organization of corporations in the United States knows that this rule, requiring corporations to be organized under a general law, is the growth of some years, and has grown out of the confusion, corruption, the partial and inequitable legislation that was the result of allowing parties to go before the legislature, and ask for a special charter. The time of the legislature was unnecessarily consumed by it; the integrity of the members of the legislature was unduly exposed; or, through the ignorance or carelessness of the legislature, and the astuteness and diligence of designing and overreaching men, there were constantly coming to light obscure clauses in these acts of the legislature, giving

powers and granting privileges which were unjust, inequitable, and which would never have been done with the knowledge of the legislature.

Therefore, owing to the evils resulting to the territory of Washington, to the people, and to the legislature, this act was passed, and has no reference whatever to the fact whether a corporation, otherwise formed, might exercise powers in that territory not prohibited or contrary to its public policy. It is a matter of no moment whatever to Washington Territory, that corporations in Colorado are created by special act. The people of the latter territory are not corrupted by it; the legislature is not corrupted by it; their time is not taken up with it. The only interest that they have in the matter is the interest that any portion of the people in the United States have in the welfare of all the other people in the United States. See, also, on this point, the remarks of Mr. Justice FIELD in *Cowell* v. *Springs Co.* 100 U. S. 59. With reference to the effect of this limitation upon the power to form corporations within the territory, I quote again from the opinion of Mr. Justice GREEN:

"Again, defendant urges that, under the second clause of section 1889, the territorial legislatures can, by general incorporation acts, authorize the formation of corporations for those purposes only which are specified in that clause; that plaintiff is not a corporation within the limitation, unless its business be an industrial pursuit; that to be within the limitation its business must be, not only industrial, but of a character like mining and manufacturing; that its business is neither of that character nor industrial; and that, therefore, since its like could not, by private or general statute, be formed within the territory, its admission to do business in the territory is prohibited by the spirit of the section. But this clause refers merely to the formation of domestic corporations, and has nothing to do with domestic recognition of foreign corporations. Besides, I think plaintiff's pursuit is industrial. It is such, according to ordinary usage of words."

It is objected that this corporation is unable to come into Washington Territory to do business there, because it is not a corporation engaged in "industrial pursuits." The objection hinges about these words: What is the charater of "mining, manufacturing, and other industrial pursuits?" It is maintained that this express company is not engaged in an "industrial pursuit;" and that if it is engaged in an industrial pursuit in the abstract sense of the words, it is not engaged in such an industrial pursuit as mining and manufacturing; and that the words "industrial pursuit," being coupled with "mining and manufacturing," are restricted in their signification to the general scope covered by those words, "mining and manufacturing." I think, myself, that this is entirely too narrow a signification to be given to those words. "Industrial" is a very large word, and, although it is associated with the words "mining and manufacturing," it would be, it seems to me, contrary to the manifest purpose of congress in this passage, to so restrain it as that the pursuit must be literally, or almost literally, a mining one or a manufacturing one.

Could not a corporation in Washington Territory be formed under this law to engage in raising wheat? This is neither mining nor manufacturing in any literal sense of the word; it is producing. Could not a corporation be formed under this law, or under a law passed by Washington Territory, to engage in navigating Puget sound? I do not think there is a specific provision for a navigation company; there are for wagon roads and railroads, but there is none for steam-boats. But I suppose it is hardly questionable that the legislature might provide, by a general law, for the incorporation in Washington Territory of a company to navigate Puget sound. An "industrial pursuit," it may be said also, in the case I put of farming, is covered by the words "colonization, and improvement of lands in connection therewith;" but these are limited by the words "railroads, wagon roads, irrigating ditches," and it is doubtful whether the colonization of lands, and the improvement of lands, standing by itself, includes farming, raising wheat, flax, hops, and corn.

I want to add here that I am not prepared to say that this section (1889) expressly, or by fair construction, prevents the territory of Washington from providing for the incorporation of a company to carry on an express business within its limits; but that it is a sufficient indication of the public policy, by the law-making power of that territory, to overcome the presumption that, by comity, this plaintiff is allowed to transact its business there. I repeat, if this act could be fairly construed as inhibiting the legislative assembly of Washington Territory from providing for the incorporation of an express company in that territory, I think it would be such a manifestation of public policy by the law-making power (the supreme power there) as would exclude this plaintiff from doing business in the territory; at least, on the ground of comity. It would have no right, as a matter of comity, to do a business there, as a corporation, which the territory itself is prohibited from authorizing a corporation to engage in. But I think the express business is an industrial pursuit, and one which the territorial legislature could provide for the formation of corporations to engage in.

The next objection to this relief is that the plaintiff has not complied with the laws of Washington, Dakota, Montana, and Minnesota, the state and territories through which defendant's road runs, concerning express companies doing business therein, and that, therefore, it has no right to enter these places, and cannot complain if it is not allowed express facilities upon defendant's road therein. To begin with, I have a very strong impression that it does not lie in the mouth of the defendant, a corporation engaged in the business of a common carrier, to say to this plaintiff, "You have not complied with the laws of these territories concerning the transaction of business therein." It does not seem to me that it is a matter which concerns the defendant. It does not seem to be a matter that the defendant can judge of; and I think the case I put to counsel on the argument has not

been answered; that is, supposing the law of Washington Territory provides that no person shall be engaged in peddling jewelry in that territory unless he has taken out a license and paid for it, and a person with pack upon his back, peddling jewelry, offers to go on board of defendant's train, having purchased a ticket for that purpose, can the defendant object and say: "You are a peddler, peddling without a license; you have no right here; we cannot carry you." I do not think the defendant can. The matter is one for the state or territory, and not the defendant. However that may be, I think the burden of proof is upon the defendant to show that the plaintiff is not qualified to act as an express company within these territories. I think that if the plaintiff failed to comply with any particular required by the laws of these territories, that the burden of proof is cast upon the defendant to show it. There is no presumption that the plaintiff has not complied with the law; as all men are presumed to obey the law and comply with it, until the contrary is shown. The plaintiff alleges in its bill that it has complied with the law. The defendant alleges in its answer that the plaintiff has not complied with it, but does not state wherein the plaintiff has not complied with it.

The defendant alleges that the plaintiff has not complied with the law, but does not state wherein. The affidavits in support of plaintiff's bill, made by its manager and officers, who ought to know whereof they speak, are clear, full, and explicit, and are to the effect that they have complied with the law, and on the argument it was substantially admitted by counsel for defendant that the plaintiff attempted to comply with it, but, in his judgment, there was some technical defect which was not very particularly stated. I apprehend it is not a very serious matter. I shall assume, then, that these laws have been complied with, and that, therefore, as far as that objection is concerned, it has no weight. But supposing that none of them had been complied with by the plaintiff, or that plaintiff had not undertaken to comply with them. Plaintiff is engaged in an interstate commerce. There can be no commerce without transportation. Transportation is one of the essential elements of commerce,—the means by which commerce is supported. The plaintiff is engaged in transportation between these points, and is engaged in an interstate commerce, and in my judgment no territory or state can impose upon it any conditions, by way of license or otherwise, to engage in this commerce by passing through its limits. Of course, the right to engage in interstate commerce is not a right to do a local business within the territory, and therefore the plaintiff has no rights to do an express business in Washington, Idaho, Montana, and Dakota, if it has not complied with their laws. But if it has an existence, and is authorized generally to do express business, it may do it, so far as interstate commerce is concerned, without reference to these laws. I think this is very clear both on the authorities and the reason of the case. The

case of *Pacific Coast Steam-ship Co.* v. *Board of R. Com'rs,* 18 FED. REP. 10, is a case directly in point.

I have not been able to come to any definite conclusion how far the legislation of congress on the transportation of dutiable goods affects this question. It seems that in 1870 congress passed an act to facilitate the transportation of dutiable goods from the ports of entry on the sea-board to important points in the interior. It has amended the act once or twice since,—once in 1880 and once in 1884. By the act of 1880 Portland was made one of the points from which goods from foreign ports might be transported in bond to the interior without paying duty at this point; and by the act of 1884, in addition to the provision that whoever undertook to carry these goods should be treated and considered as a common carrier for that purpose, it was expressly provided that they might be carried by express companies in such boxes or safes as they usually had or furnished for like articles. The act goes upon the assumption that an express company is a safe mode of conveyance, and a recognized mode of transporting such things, without special provision as to what should be the character of the vehicle, the box, or safe. How far that should be considered a regulation of commerce, under which this plaintiff may carry goods from Portland to St. Paul, irrespective of any inimical or restraining legislation of the territories between Portland and St. Paul, I am not prepared to say. It is not necessary to decide it, though the inclination of my mind is that it has some effect upon the matter in favor of the plaintiff.

The next objection is that the defendant is not able to furnish the facilities, admitting that plaintiff has a right to them. Upon this phase of the case counsel for the defendant, with his usual ability and zeal, insists that, if there is a conflict of evidence upon that point, the court is powerless to act, as it is not at liberty to weigh evidence,—to decide either from the number of witnesses on the one hand, and the scarcity on the other, or from the inherent probability of the testimony, or from the circumstances which are commonly known to all men, or altogether, but is powerless to act from the simple circumstance that there is a conflict of testimony in the affidavits concerning this question of its ability to furnish these facilities. I understand counsel to maintain that this proposition extends to any material question, that may arise on the application for an injunction, that is involved in the conflict of evidence,—one against a thousand although it be; that in such case the court has not the power to act, particularly in the case of an application for a mandatory injunction. I must admit that this doctrine is new to me. I do not think it can be found in those words, or anything like it, in the books; but I conceive the true doctrine to be that, where there is a conflict of evidence, the court must decide, and act according to the weight of evidence. But I can see very readily that the court might require more satisfactory and conclusive evidence in one case than another, owing to

the effect or consequence of its action. If its action were merely conservative, and could do no harm, it might be at liberty to act where there was a well-balanced conflict of statement. But if its action might seriously injure or inconvenience the defendant, it might very properly refuse to act where the evidence was at all equal and conflicting.

With this understanding of the rule of evidence in these matters, I now proceed to dispose of this point. There are two affidavits made by the officers of this defendant corporation. They state in so many words that the defendant is not able to furnish these express facilities, and goes on to say wherein they are unable to do so. They say, first, that it would require an additional car beyond Missoula for the plaintiff to do its business in, and they have none; that if an additional car is put on the train for the express company the weight of the train would be increased, and the propelling power is now so evenly balanced that, with an additional car, it would require another locomotive, and that would put the company to very considerable expense. I asked the counsel for the defendant, in the course of his argument, if he expected the court to believe that this defendant corporation, with all its power, wealth, and resources, was really unable to furnish an express car to this plaintiff, and the counsel, of course, had not the hardihood to state that he thought the court would be expected to believe it, but only that the defendant meant that to do it would take some little time. Of course, taking that view, the statement does not amount to much. It may be that defendant corporation has not a car which, at this moment, it can divert to the use of the plaintiff. But if it can supply a car in five or six or ten days, that is practically the same thing. In my judgment it can do so to-morrow if it wants to. The testimony on the part of the plaintiff shows that the car which is used by the plaintiff from Wallula junction to Missoula is carried from there to Helena empty, and there is no reason why it should not be used by the plaintiff to Helena, except the desire of the defendant not to allow the plaintiff to use it. Of course, when it reaches Helena the plaintiff is in the center of business of that country. It is in reach of another railroad, the Northern Utah, by means of which it has access to the Central and Union Pacific roads. The defendant allows the plaintiff to go to Missoula, and there requires it to leave the train, and the car is carried from there empty. In this connection it must be noticed, as a material circumstance, that there is a rival express company upon this road, the Northern Pacific Express Company, and it is manifest that the defendant intends to give the express business over its road to this company if it has a lawful right to do so.

In considering the question whether the defendant has furnished facilities to the plaintiff as it ought to, and whether it is able to do so, or whether this is an excuse for not doing what the law requires it to do, the Northern Pacific Express Company and its relations to

this defendant is a very material circumstance. One of the affidavits, stating that the defendant is unable to furnish an express car, is made by an officer of the defendant and of the Northern Pacific Express Company. The fact that its stock is owned largely by the men and people in the Northern Pacific Railroad Company, and is, in fact, its other self, is a very material circumstance. The defendant may have been advised that, being a railway corporation, it was not competent to do an express business, and therefore it has undertaken to do so as nearly as it can, and has formed a corporation for that purpose that is, in fact, itself. It is also stated in these affidavits that the plaintiff will not be injured if this relief is not granted, because the express business is overdone east of Missoula. There is such competition between the American Express Company and the Northern Pacific Express Company that they are carrying at losing rates. This is a matter which does not concern the defendant upon any theory in this case which can be taken into consideration. Whatever the fact may be in relation to the Northern Pacific Express Company, as to its connection with the Northern Pacific Railway Company, in the eye of the law it has no more relation to it than it has to the plaintiff; it has no more interest in one than the other. It is no matter to the defendant if they are both broken up in the express business, so that they pay for the services which they require. This is not a matter of any moment to the defendant. Nor is it probable that, if the defendant is allowed express facilities upon the defendant's train east of Missoula, there will be any need either of additional power or cars. It does not follow that any more business is going to be done. I will not say—I am not sufficiently well informed to say—that there would be no need of another car. It is not probable that the bulk of the goods transported would be materially increased. And there may be room for both companies in one car, if it would not be disagreeable to the employes. Instead of having separate cars, the one now in use might be partitioned.

The result would be that Wells, Fargo & Co. would have their share of the business, and what they would do the Northern Pacific Express Company would not do. There probably would not be any particular addition to the business. It would be distributed between the two companies. Wells, Fargo & Co., having been on the ground so long a time, and having now access to the business, would do its share of it, and by as much as it did, the Northern Pacific Express Company would do less. Besides, the plaintiff is not entitled to this injunction, except upon giving security to pay whatever is right; and it comes to this: that if the defendant has to put on another locomotive, or has to put on another car, it is one of the circumstances to be considered, and should be charged for. Of course, the main question in this case, as to whether the plaintiff is entitled to these facilities, and whether it is the duty of the defendant to furnish them, has been decided in this court in the case of *Wells, Fargo & Co.* v. *Oregon Ry. & Nav. Co.*

8 Sawy. 600; S. C. 15 Fed. Rep. 561. It is not now proposed to consider that question any further. It is a serious question, and an important one, which awaits the final decision of the supreme court. If the ruling of this and other circuit courts is affirmed in the supreme court of the United States, the question is settled in favor of the plaintiff; if otherwise, of course the question is decided in favor of the defendant. But, for the time being, we go upon the assumption that the defendant is under obligation to furnish reasonable express facilities to the plaintiff, or any other express company that wishes to do business on its road.

Another point was made, and that was that this application has been delayed. This objection is made particularly with reference to the mandatory character of the injunction. But the delay in this case has not worked any prejudice whatever to the defendant; it has worked to its advantage, if it be an advantage to keep the plaintiff off its road. It has not changed its condition; it has not built up a wall which it has now to take down; it has not done anything which it would have to undo. In so far as it has had any effect, it has been to its advantage, if it be an advantage, as I apprehend it is, to keep the plaintiff off its road. The delay is more apparent than real. 1 think the fact is that the defendant has been operating this road about 14 months, and it appears from the affidavits in this case that the plaintiff commenced a suit in Washington Territory prior to that time, and maintained there until a short time since, when the defendant came into this state with its road from Kalama to Portland, whereupon the plaintiff commenced this suit, and shortly after dismissed the other. The delay is more apparent than real; but if there was an actual delay, there is nothing in it which can prejudice the defendant. If anybody has suffered by the delay it is the plaintiff, and not the defendant.

There is only one other question to be considered: that is, whether a mandatory injunction ought to be issued in a case of this kind; that is, so far as this is a mandatory injunction. It is laid down in Pom. Eq. Jur. § 1539, "that where the injury is immediate and pressing, and irreparable, and clearly established by the proofs, and not acquiesced in by the plaintiff, a mandatory injunction ought to issue." An injunction, as an equitable remedy, has grown wonderfully in the last 50 years, and, of course, if we are to be guided by decisions and *dicta* prior to that time, the court would often fail to exercise this power where it is necessary. I think myself, with Prof. Pomeroy, that very much of the objection and argument that has been made against the allowance of a mandatory injunction in times gone by is simply absurd; and that it was absurd is manifest by the practice of the courts of evading the rule,—admitting it by mouth, but overruling it in act; that is to say, admitting that the authorities stated that a mandatory injunction ought not to be allowed, and at the same time enjoining a party to do some affirmative act in a negative form.

When the injury is immediate and pressing, and at the same time irreparable, and the right to relief is made out clearly upon the proof, there is no reason why a mandatory injunction should not issue. In this case, although the injunction is mandatory in form, it is in effect negative; it can do no harm to the defendant, even if it should turn out to be wrong. It is simply an equivalent to the ordinary provisional injunction. The defendant is engaged in operating this road; it is there for the purpose of carrying all express matter which can be gathered up and brought to it, to be carried between its *termini.* Considered as the Northern Pacific Railway, and not as a private partner of the Northern Pacific Express Company,—in which light we have no right to regard it,—considered simply as the Northern Pacific Railway Company, it is a matter of no particular moment to it whether the express matter is furnished by Wells, Fargo & Co. or by the Northern Pacific Express Company. Therefore the defendant cannot be injured, in any legal sense, if it be required to furnish these facilities to Wells, Fargo & Co., provided that Wells, Fargo & Co. give a bond to compensate the defendant in every respect for the reasonable expenses incurred in furnishing the facilities. Much of the law and argument on the subject of mandatory injunctions has very little application to this case, because while it is mandatory in form, it is hardly so in effect. It simply requires the defendant to do that which it ought to do,—to carry express matter if furnished by A. as well as by B., being paid for at the same rate, and making the same amount of money out of it.

These, I believe, are all the points made by counsel for the defendant in his elaborate argument in this case. I do not think he has left anything unsaid, or any stone unturned. The main question— as to the duty of the defendant to furnish plaintiff express facilities —I have passed on before; and the particular and peculiar ones made in this argument have been so thoroughly and well considered by Mr. Justice GREENE, in the case in Washington Territory between these same parties, that I might have contented myself by simply referring to his opinion, from which I have already quoted..

The order of the court will be that the defendant be required to furnish ordinary express facilities to the plaintiff on its road between Oregon and St. Paul, and connecting lines or links, whatever they may be, and to furnish the plaintiff such facilities as the defendant furnishes any other express company; and, in addition, that the plaintiff give a bond, to be approved by the master of this court, in the sum of $25,000, to pay all costs, charges, and damages which the defendant may incur. I have fixed this sum, but if the counsel for the defendant thinks the sum ought to be greater, I will hear him now, or at any time. Possibly, at some future time, it may be necessary to increase the bond.