## WIEMER v. LOUISVILLE WATER CO.

### (Circuit Court, W. D. Kentucky. March 28, 1903.)

1. WATER COMPANIES—DUTIES—DISCRIMINATION BETWEEN CONSUMERS.

   A water company chartered for the purpose of supplying a city and its inhabitants with water is a quasi public corporation, and it is its duty to supply water to all who apply therefor and offer to pay the rates, without discrimination.

2. SAME—CONSTRUCTION OF CHARTER.

   A water company chartered for the purpose of supplying a city "and its inhabitants" with water is not justified in arbitrarily refusing to supply water to one who is engaged in the business of street sprinkling in the city, and who has contracted with owners of property therein to sprinkle the streets in front of their respective lots, on the ground that the contractor himself is not an "inhabitant" of the city, nor because the water for such purpose is not supplied directly from its pipes to the inhabitants for whose benefit it is to be used.

3. SAME.

   A water company has no right to refuse to supply water to one who applies therefor in good faith, and is able and willing to pay the rates charged, on the ground that in making his application he failed to comply with certain technical rules, without giving him the opportunity to supply alleged omissions or informalities in his application, and where, under substantially similar circumstances, water is furnished to a business competitor of such applicant

4. SAME.

   It is the province of a water company to supply water impartially to its customers, and it is not charged with any duty nor given the power to direct its use after its delivery, nor to make rules regulating its use on the streets, or to prevent nuisances thereon, which is a function of the municipal government.

5. FEDERAL COURTS—STATE LAWS AS RULES OF DECISION.

   A decision of the highest court of a state denying a writ of mandamus to compel certain action on the part of a water company is not an authoritative adjudication of the statutory duties and powers of the company which is binding on a federal court in a suit in equity arising under similar circumstances, where, under the statutes of the state as previously construed, the court must necessarily have held that a proceeding in mandamus would not lie against a corporation of the character of the defendant.

6. MANDATORY INJUNCTION—POWER TO GRANT.

   A court of equity has power to grant a mandatory injunction restraining a water company from refusing to supply water to a complainant on the same terms it is supplied to others, where it clearly appears from the facts that such refusal is an unlawful discrimination, and that the injunction is the only adequate remedy available to complainant.

In Equity.    On motion for preliminary injunction.

See 130 Fed. 244, 246.

Lane & Harrison and John Roberts, for complainant.
Burnett & Burnett and George Du Relle, for defendant.

EVANS, District Judge.    Although the court has given this case very attentive consideration, it is too much pressed for time just now

¶ 1. See Waters and Water Courses, vol. 48, Cent. Dig. § 275.

¶ 5. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

to do more than state its conclusions generally without going into details. By his bill and the pending motion the complainant, Wiemer, seeks an injunction, mandatory in character, to compel the defendant to supply him with water; he offering full security for the payment of the price thereof. The learned counsel for the defendant do not contest the general proposition that the defendant is a corporation which owes certain duties to the public, and the court is of opinion that those duties are, in general terms, very accurately defined in the following language, found in section 931, 3 Cook, Corp., viz.: "A waterworks company is also a quasi public corporation. It must supply water to all who apply therefor and offer to pay the rates." Indeed, the latest authorities seem very definitely to establish the rule that water supply companies like the defendant are required to supply water impartially to all consumers, and that they cannot act capriciously, nor discriminate against any one who is able to pay for the water supplied. In short, to phrase it in familiar terms, the law does not allow such companies to unduly advantage any customer by doing for him what it will not do for others under circumstances substantially the same. Griffin v. Goldsboro, 122 N. C. 206, 30 S. E. 319, 41 L. R. A. 240; Haugen v. Albina, 21 Or. 411, 28 Pac. 244, 14 L. R. A. 424. Whether so intended or not by defendant, the court is of opinion that the effect of what was done in this case, as shown by the testimony, was to unduly discriminate against the complainant and in favor of the Louisville Tramway Sprinkler Company, a rival in the business of street sprinkling. Perhaps there can be no two opinions upon this proposition of fact when all the testimony is attentively considered, but it is very earnestly urged for the defendant that the complainant has, in no event, any right to claim a supply of water from the defendant, because he is not an "inhabitant" of Louisville, Ky., and the language of the first section of the charter of the defendant is quoted and relied upon to support the contention. That language is that Thomas E. Wilson and others are hereby made a corporation "with power and authority to construct and establish within the city of Louisville or elsewhere for the purpose of supplying said city and its inhabitants with water." 2 Acts 1853–54, p. 121, c. 507. It appears alike from the bill of complaint and from the testimony heard that the sole purpose for which the water sought to be obtained by the complainant is to be used by him is that of sprinkling the streets in front of the houses of "inhabitants" of this city, and the court, in the absence of any authority to the contrary, is clearly of opinion that the construction contended for is very much too narrow. The charter does not demand that the "inhabitants" of Louisville, in obtaining water for the useful, and, indeed, necessary, purpose of sprinkling the streets, shall be allowed to get it only through the medium of an "inhabitant" of the city. The beneficial thing—the essential purpose —in this instance is at last to supply water for the use of "inhabitants" of Louisville alone, and that fact seems to bring the case clearly within the intention and the equity of the statute creating the defendant. The relations between the complainant and the defendant are much more accurately described by what has just been said than they are by the suggestion that the defendant is simply a wholesale dealer in water

and the complainant a mere retailer thereof. The duties of the defendant to the public imply very much more than it is a mere vender of its own property to those to whom it sees fit to sell it. And so it may be said that the cost to the complainant of the water is a very small part of the cost of what is required to sprinkle the streets for property holders or their tenants.

2. It is also contended by the defendant that this case does not come within the terms of the charter in another respect, and that the defendant is not required to furnish water to any one except directly from its pipes and aqueducts for drinking, bathing, washing, and similar purposes. But the court is of the opinion that this contention also insists upon an interpretation of the charter which is much too restricted. It may be assumed from the testimony that the water sought by the complainant must in fact come through the pipes and aqueducts of the defendant. Although that water is probably not directly supplied by the defendant immediately to the persons who get the real benefit of it, still those persons, as already indicated, are the ones whose wants are ultimately and really supplied through the complainant as their representative for that purpose. Hence it seems to the court that the construction contended for is not such as should govern it in ascertaining the duties the defendant owes to the public. Those duties are to be tested by rules a little broader and more comprehensive.

3. It is also insisted that the complainant did not, in making his application, comply with certain rules of the company offered in evidence. Assuming that the defendant has power to make reasonable rules in the premises, the reasonableness of those rules must be tested not only by what appears on their face, but also by their practical operation and interpretation. Certainly the operation of the rules in this instance was to exclude the complainant from obtaining water, and his customers from employing whom they pleased to obtain it for them and use it for their benefit. Under circumstances substantially quite similar, another sprinkling company is favored to the entire exclusion of the complainant, and that, too, without giving him any real opportunity to supply alleged omissions or informalities in his application for water, which application was obviously and certainly made in the utmost good faith, and was backed by manifest ability to secure to the company the price of the water. If the defendant is authorized to proceed in such a manner, the rights of the public, as we have shown them to be, will be most easily defeated under the guise and operation of a rule which may be interpreted in the most arbitrary way to the exclusion of any applicant for water, and without his knowing the grounds of the exclusion, or being given any opportunity to supply omissions or correct informalities after the defendant has found them to exist. In view of the rights of the public, as shown by the authorities referred to and others which might be cited, we think this cannot be done to the injury of any competing applicant for water. The duty of the defendant and the rights of the complainant are very much simpler.

4. It is also insisted that the rules of the defendant were made in the interest of the public, so as to prevent double sprinkling of the streets, contentions between water-cart drivers as to precedence, nuisance at

the hydrants, etc., but the court is of opinion that these and kindrea suggestions refer to matters of little or no concern in the legal sense to the water company, inasmuch as they appertain mainly, if not altogether, to the jurisdiction of the city of Louisville over its streets. Any possibility of waste of water would appear to be a very slight and insignificant matter; and the streets can be cared for and protected only by the municipality, and not by the defendant, whose duty is limited to supplying water, and it is not charged with the duty nor given the power to take care of the streets, nor to preserve order or prevent nuisances thereof. These are objects outside of the purposes of the defendant's creation, and are altogether municipal in character. Any other view must proceed upon the assumption that a .water supply company has power to control or direct the use of the water it has supplied after its delivery to the applicant. But the court is of opinion that the matter admits of a much simpler solution so far, at least, as the issues in this case call for it. The law makes it the duty of a water company to supply water to applicants generally, and when that is done its whole duty is performed. Assuming that the applicant was entitled to the water, then what is done with it after he gets it is, in the legal sense, a matter of no concern to the company. If, by any use of the water, the person who receives it violates any law or ordinance, his liability therefor is not to the water company but to the local or state government.

5. While the defendant may make reasonable rules for conducting such business as may be within its powers, it is by no means clear that the rules actually made by it do not go beyond those powers, and trench upon those of the city. It may be quite doubtful whether, in view of its duty to supply water to all the public, the defendant can lawfully say that any property owner may not get water to sprinkle on the street in front of his home through anybody whom he chooses to employ, whether a majority of his neighbors prefer some other person for that service or not. It may well be doubted whether the defendant can put any such restriction upon a citizen under the guise of any rule it is lawfully authorized to make.

6. The court has been referred by counsel to a MSS. opinion of the Court of Appeals of Kentucky rendered in 1879 in the case of Elizabeth Fuhring against the Louisville Water Company, in which the appellant had sought a mandamus to compel the company to supply her with water under circumstances somewhat, but not exactly, similar to those disclosed in this case, and the Court of Appeals held that a denial of the remedy by the lower court was proper. Section 721, Rev. St. U. S. [U. S. Comp. St. 1901, p. 581], requires that in "actions at common law" the laws of the state shall furnish the rule of decision in the federal courts sitting in such state, and it is not doubted that the judicial decisions of the hightest court of the state, as well as the statutes, are evidence of what the law of the state is, but in its opinion in the case of Bucher v. Cheshire R. Co., 125 U. S. 582, 8 Sup. Ct. 977, 31 L. Ed. 795, the Supreme Court said:

"The language of the statute limits its application to cases of trials at common law. There is therefore nothing in the section which requires it to be

applied to proceedings in equity or in admiralty; nor is it applicable to criminal offenses against the United States (see U. S. v. Reid, 12 How. 361, 13 L. Ed. 1023), or where the Constitution, treaties, or statutes of the United States require other rules of decision. But with these and some other exceptions, which will be referred to presently, it must be admitted that it does provide that the laws of the several states shall be received in the courts of the United States, in cases where they apply, as the rules of decision in trials at common law."

Although the pending suit is not an action at common law, still if the Court of Appeals had settled the construction and interpretation of the defendant's charter as to pending questions, this court would almost certainly, and upon obvious grounds, follow that construction. It will be seen, however, that in the Case of Fuhring the Court of Appeals, while saying that the appellant did not claim to do business in Louisville, only held that she was not entitled to a certain remedy, namely, a writ of mandamus. Whether she did or did not carry on the business of a street sprinkler in this city, as complainant has done for several years, does not certainly appear. The court is therefore of opinion that the following language of the Supreme Court of the United States in the case of the Town of Venice v. Murdock, 92 U. S. 501, 23 L. Ed. 583, is not only applicable, but is controlling, so far as the effect of the opinion in the Fuhring Case is concerned. That language is as follows:

"It is argued, however, that the New York decisions are judicial constructions of a statute of that state, and therefore that they furnish a rule by which we must be guided. The argument would have force if the decisions in fact presented a clear case of statutory construction. But they do not. They are not attempts at interpretation. * * * There is therefore before us no such case of the construction of a state statute by state courts as requires us to yield our own convictions of the right, and blindly follow the lead of others, eminent as we freely concede they are."

A further suggestion may place this phase of the case in a light even clearer. As has been intimated, the Court of Appeals, in the Fuhring Case, was probably not called upon to define the rights of Fuhring, nor the duties of the defendant under its charter. The petition in that case sought nothing except a writ of mandamus to compel the company to furnish water to her. To a certain extent it is true that, if nothing else had appeared, that would have called for an interpretation of the charter, but there was a necessary preliminary question to be determined, namely, was the plaintiff in that case, in any possible event, entitled to the remedy by mandamus? Neither it nor its officers were "executive or ministerial officers" within the meaning of section 477 of the Kentucky Code. That section, and one or two others, regulate the Kentucky practice with respect to the remedy by mandamus, and it appears even upon the face of the Code provisions that the judgment of the inferior court denying the writ was necessarily right, inasmuch as, under the Code, the remedy by mandamus was not available in a case against either a private individual or a private corporation such as the defendant in the strict legal sense is, although its duties may make it a quasi public body like a railroad company and certain other corporations. However, we are not left in any doubt as to the proper construction of the provisions of the Code. That the remedy

by mandamus was not authorized by the Kentucky Code in such a case as that of Fuhring had been theretofore expressly decided by the Court of Appeals in the case of Cook v. The College of Physicians, 9 Bush, 541, Judge (later Senator) Lindsay writing the opinion of the court. It is true that the case was decided when the former Code (formerly called Myers' Code) was in force, but the provisions of the present Code (that of 1877) are, in substance and effect, precisely the same as those of the former. The opinion in the Fuhring Case was not prepared for publication, and was not reported. The result reached was manifestly proper, whether or not the reasons given for it took a wider range than was necessary. Why it did not put the court's judgment upon grounds similar to those in the Cook Case is not apparent, especially as in the much later case of Schmidt v. Abraham Lincoln Lodge, 84 Ky., at page 494, 2 S. W. 156, the rule in the Cook Case was expressly reaffirmed. So that it is quite obvious that we have no authoritative interpretation by the Court of Appeals of the defendant's charter in respect to the matters involved in this suit. The result is to leave the court at liberty to construe the defendant's charter and determine its duties in harmony with the modern rule as to the obligations of corporations of a similar character.

7. It remains to be determined whether the remedy by mandatory injunction is available to the complainant upon the facts of the case. In its opinion in the case of Ex parte Lennon, 166 U. S. 556, 17 Sup. Ct. 661, 41 L. Ed. 1110, the Supreme Court, in speaking of the relief there sought, said:

"Perhaps, to a certain extent, the injunction may be termed mandatory, although its object was to continue the existing state of things, and to prevent an arbitrary breaking off of the current business connections between the roads. But it was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action, but may even require affirmative action, where the circumstances of the case demand it."

That a mandatory injunction is often resorted to in modern practice is abundantly shown by the following authorities: Pokegama v. Klamath, etc. (C. C.) 86 Fed. 528; C., B. & Q. R. R. v. Burlington, etc. (C. C.) 34 Fed. 481; Toledo, etc., v. Pennsylvania Co. (C. C.) 54 Fed. 730, 19 L. R. A. 387; Coe v. L. & N. R. R. (C. C.) 3 Fed. 775; Wells, etc., v. N. P. R. R. (C. C.) 23 Fed. 469; Parsons v. Marye, Id. 113; 1 High on Inj. § 2; 2 Spelling, Ex. Relief, § 1021; 1 Spelling, Ex. Relief, §§ 234, 412; 10 Ency. Pldg. and Prac. p. 879. This character of relief will not, however, be allowed, unless in very clear cases; but, tested by all the rules referred to, it seems to the court that it is the only adequate remedy available in this case. This is emphasized by the absence of power in this court to award a mandamus in a case like this. Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743.

It follows that the motion for a mandatory injunction pendente lite should be sustained, with the condition only that, should it at any time become impossible for defendant to supply the water, it should have leave to apply for a modification of the order requiring it to do so.