BEECH CREEK R. CO. et al. v. OLANTA COAL MINING CO.

(Circuit Court of Appeals, Third Circuit. December 6, 1907.)

No. 33.

1. RAILROADS—COMPELLING SWITCH CONNECTION—PROCEDURE.

The primary purpose of Act Pa. May 5, 1832 (P. L. 501), and its supplements, which provide that if the owner of land, mills, coal mines, or other real estate in the vicinity of any railroad, and not more than three miles distant therefrom, shall desire to make a railroad thereto "over any intervening lands," he shall institute a proceeding therefor, and the necessity of the proposed connection and the damages sustained by the intervening owner shall be determined by a jury of six men, is to provide an adverse proceeding by which a siding may be laid over private property, and it does not provide a means of enforcing a right to a switch connection by one whose property is adjacent and contiguous to the railway with which the connection is sought, in which no third party has any interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 118.]

2. SAME—RIGHT OF MINE OWNER TO CONNECT SWITCHES—ENFORCEMENT IN EQUITY.

In Pennsylvania, where by statute every railroad company is made a common carrier and its railroad a public highway, every such company is in duty bound to permit mill owners, mine owners, and others to construct on their land adjoining its railroad suitable switches for the use of their business, and connect the same with the company's tracks, subject to reasonable regulations, and to receive and deliver from and to such switches cars and freight on equal terms with other shippers, and such duty may be enforced by a court of equity by a mandatory injunction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 118.]

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 144 Fed. 150.

M. E. Olmsted, for appellants.

D. L. Krebs, for appellee.

Before DALLAS and GRAY, Circuit Judges, and HOLLAND, District Judge.

HOLLAND, District Judge. This is a bill of complaint filed by the Olanta Coal Mining Company to compel the New York Central & Hudson River Railroad Company, lessee of the Beech Creek Railroad Company, to construct a siding at its coal mines to connect with the company's road; the coal company offering "to pay all expenses in connection with putting in the siding." The request, accompanied by this offer of payment, was refused. The prayer for relief is that the railroad company "shall proceed without further delay forthwith to construct such siding and switching connections, and to give and grant to your orator the same facilities for shipping and transporting its product to market as are furnished to other miners and shippers of bituminous coal on its lines." The Circuit Court entered a decree directing the railroad company to place in position and construct a switching or siding connection to connect with the proposed siding of the coal company in plaintiff's bill and shown by plaintiff's draft offered in evidence with the main track of the railroad company, the cost price of switching frogs, labor and expense of putting them in place by defendants to be paid by the plaintiff. From this decree the railroad company took this appeal.

Eighteen of the 47 assignments of error are to the failure of the court to find certain facts, and 21 to the failure of the court to find certain conclusions of law. The remaining 8 assignments are to the alleged errors arising out of the decree of the court. While the assignments of error are numerous, the only questions necessary to consider are: (1) whether the appellee is required to proceed in accordance with the provisions of the Pennsylvania act of May 5, 1832 (P. L. 501), and its supplements, whereby a jury of six disinterested and judicious men, resident in the county, shall pass upon the necessity for such siding and fix upon the mode, manner, or point of connection with appellants' railroads. (2) Can this bill be maintained for the determination of these questions and enforcing any right the appellee may have?

The bill filed alleges in the fourth paragraph that the appellee's "territory is adjacent and contiguous to said railroad," etc. This is not denied by appellants' answer. An examination of the record shows that the correctness of this allegation in the bill was conceded in the production of the evidence; and it is fair to assume that such is the fact. Could the appellee then have proceeded under the Pennsylvania act of May 5, 1832, and its supplements? It is the owner of mining property lying contiguous to the railroad, and no lands intervene over which it would be necessary to lay the proposed siding. Could it have alleged the necessary jurisdictional facts in a petition to the court of

common pleas of the county to entitle it to proceed under the act in question, the first section of which is as follows:

"That if any owner or owners of land, mills, quarries, coal mines, lime kilns, or other real estate, in the vicinity of any railroad, canal or slack water navigation, made or to be made by any company, or by the state of Pennsylvania, and not more than three miles distant therefrom, shall desire to make a railroad thereto over any intervening lands, he or they, their engineers, agents and artists, may enter upon any lands, and survey and mark such route as he or they shall think proper to adopt, doing no damage to the property explored, and thereupon may present a petition to the court of common pleas of the county in which said intervening land is situated, setting forth his or their desire to be allowed to construct and finish a railroad, in and upon the said route, and the beginning, courses and distances thereof, and place of intersection of the main railroad, canal or slack water navigation, which shall be filed and entered of record in the said court, whereupon the said court shall appoint six disinterested and judicious men, resident in the said county, who shall view the said marked and proposed route for a railroad, and examine the same, and if they or any four of them shall deem the same necessary and useful for public or private purposes, they shall report in writing to the subsequent term of said court, what damages will be sustained by the owner or owners of the said intervening land, by the opening, constructing, completing and using the said railroad, and the report of the said viewers and appraisers shall be filed of record in the said court, and if not appealed from, be liable to be confirmed or rejected by the said court, as to right and justice shall appertain, and if either of the parties shall be dissatisfied with said report, he or they may appeal therefrom to the said court of common pleas within twenty days after such report has been filed in the prothonotary's office, and not after; and after such appeal, either party may put the cause at issue, in the form approved of by the court, and the said issue shall be placed first on the trial list of the next regular term of the said court, and be there tried and determined by the court and jury, and the verdict so rendered, and judgment thereon, shall be final and conclusive, without further appeal or writ of error, and it shall be the duty of the said viewers and jury, to take into consideration the advantages which may be derived by the owner or owners of land, passed by the said railroad, when making up their record or forming their verdict."

The supplement of March 28, 1840 (P. L. 196), provides that if the parties interested cannot agree upon the mode, manner, or point of connection with such railroad, the same shall be determined by the jury appointed, and provides for appeal or writ of error upon all questions; and the supplement of February 17, 1871 (P. L. 56), provides that the appeal to court from the report of the viewers shall extend, not only to the assessment of damages, but also to the question of the necessity for the proposed lateral railway or siding, and the act of April 14, 1893 (P. L. 15), limits the length of any such lateral road to five miles. In all cases where the act of 1832 is applicable the questions to be determined by the jury are (1) the necessity for the lateral railway; (2) the mode, manner, and point of connection; and (3) the amount of damages to the intervening property owner or owners, all of which questions can be reviewed on appeal if either of the parties interested be dissatisfied with the finding of the jury. It is evident that the purpose of this legislation was to provide a proceeding by which the owners of mines, mills, quarries, lime kilns, and such like industrial establishments could secure shipping facilities by the construction of switches and lateral railways over any intervening land between such owners of mines, etc., and the railway desired to be

reached. It no doubt frequently happened that the owner of mines, mills, or quarries was prevented from constructing a siding because of the objections raised and persisted in by other parties, owners of land lying between him and the railroad, and there was no way of securing the right of way over this private property except by agreement, and the assent of the intervening property owners could not always be secured. If private property was to be thus taken, it was necessary that some means should be provided for this purpose, and the mode of procedure was afforded by the act referred to and its supplements, and this procedure was expressly confined to the cases which require the taking of intervening private property to reach the railroad. The appellee, being the owner of mines lying adjacent to the right of way of the railroad company, could not allege the necessary jurisdictional facts, to wit, the ownership of mines in the vicinity of appellants' railway, and the desire to construct a siding over intervening land, to bring the case within the terms of the act. It is urged, however, that because the supplement of 1840 requires the jury to pass upon the question of the mode, manner, or point of construction under the act, therefore the railroad company in all cases is entitled to a jury to determine this question. This conclusion we do not think follows. The primary purpose of the act is to provide an adverse proceeding to lay a siding over private property when the necessity of such a siding is made to appear to the satisfaction of a jury. The private property owner is entitled to damages resulting from the taking of his land. This must be assessed by the jury; and, in order that the assessment may be justly made, the mode, manner, and point of connection must be ascertained as this necessarily affects the question of damages, and is only required to be determined by a jury when necessary to enable them to assess damages to the intervening property owner. So that we conclude that the proceeding was not intended to provide a means of enforcing a right to switch connection by one whose property lay adjacent and contiguous to the railway with which a connection is sought, nor is there any necessity for such a proceeding where there are no third parties whose interests are involved. The shipper and the railroad are the only parties interested in the connection, and their relative rights and duties can be adjusted without the intervention of a jury. That the appellee has a right to such connection we thing is undoubted. The learned circuit judge, in passing upon this question, has treated the matter so fully in an opinion that we adopt the following:

"Passing by the many irrelevant matters and proofs in the voluminous record, we address ourselves to the gist of the bill, which, in substance, is to compel the railroad to permit switch connections with its line to enable complainant to ship its coal to market. The latter is a coal-mining corporation, chartered July 9, 1903, and by its charter is authorized to carry on the business 'of mining, shipping and selling of coal, and the manufacturing, shipping, and selling of coke and other products of coal.' Its mining property of some 610 acres contains approximately 550 acres of coal, in which are several different veins. The property adjoins the right of way of the railroad. It has no other outlet for its coal save said road. The Beech Creek Railroad Company was chartered under the provisions of the general railroad act of Pennsylvania of April 5, 1868 (P. L. 62), and its supplements. It leased its property to the New York Central Railroad Company by a long-term lease.

It is conceded that all its duties and obligations rest on its lessee, the New York Company. By virtue of the Constitution of Pennsylvania, article 17, § 1, which provides, 'All railroads and canals shall be public highways, and all railroad and canal companies shall be common carriers,' and the general railroad law of February 19, 1849 (P. L. 86), which provides, 'Upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the conveyance of passengers and the transportation of freight'—the Beech Creek Railroad is a public highway, and is chargeable with the duties and obligations of a common carrier. Such is the view of the highest courts of that state. In Railroad Company v. Colwell, 39 Pa. 339, 80 Am. Dec. 526, it is said: 'Though the corporation in respect to its capital is private, yet it was created to accomplish objects in which the public have a direct interest, and its authority to hold land was conferred that these objects might be worked out.' And this accords with the general federal view. 'The question,' says the Supreme Court of the United States in Cherokee Nation v. Southern Kan. R. R. Co., 135 U. S. 657, 10 Sup. Ct. 965, 34 L. Ed. 295, 'is no longer an open one as to whether a railroad is a public highway established primarily for the convenience of the people and to subserve public ends.' Its road then being a public highway and it a common carrier, its duty, generally stated, is to receive from any person for carriage and transportation such freight as the carrier holds itself out as willing to carry and the party sending offers to pay freight upon. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465; Southern Express Company v. St. Louis, 5 Myers Fed. Dec. § 1511, 10 Fed. 210. Now, in mining, coal is carried from the mines in small cars, and delivered to and carried by railroad companies in car load lots. To do this requires sidings on which the railroads' cars may be conveniently handled and filled. Such a connection the complainant asks, and is willing to bear the expense of making. Whatever may be the rights of shippers and the obligations of railroads in other jurisdictions, the general right of the adjoining property holders in Pennsylvania to such connections with a railroad chartered by that state has been decided by the highest court of that state in the case of the Pittsburgh & Lake Erie R. R. Co. v. Robinson, 95 Pa. 428. There Robinson was the owner of a manufacturing site adjoining the railroad, and the question was the value of the land of which the railroad was condemning a part. It was held that the property owner had a right to switch connection with the railroad, and that this right was an element in determining the value of his land, and the proposition 'that the defendant company is a common carrier, that its railroad is a public highway, that the plaintiffs have a right in law to construct on their land, adjoining said railroad, a suitable switch for the uses of their business, and connect the same with the tracks of the defendant company, subject to the general rules of said company regulating such connections; and that the defendant company is bound to receive and deliver to and from such switch or siding cars and freight for the said plaintiffs to and from such points, on the line of defendant's railroad, as may be designated by plaintiffs, and on equal terms with all other individuals or transportation companies,' was held a proper definition of his rights in that regard. In considering this proposition the court said: 'We are also of the opinion that the plaintiff's third point should have been affirmed. It is conceded that, under our acts of assembly, the owner of mills and manufactories may of right connect their private sidings with the railroads in their vicinity, and though as counsel for the defendant in error says, it does not follow that such owner may ever avail themselves of such right, nevertheless the fact that such a right exists in them may largely advance the market value of their several properties. Certainly privileges which may be used to facilitate transportation to and from large factories must have some effect upon their values.' Under this construction thus placed upon its own laws by the court of highest resort of Pennsylvania, the right of a mine operator to proper and reasonable switch connections is clear unless there is something in the facts and circumstances of the particular case warranting a refusal of this right. We find none here. The complainant offers to bear the entire expense of the connection and siding. It is willing that the connection be made in the mode and at the point the respondent prefers."

The conclusion here reached is in accord with a proper notion of the obligation laid upon a railroad company in this regard, and is fully sustained by the authorities cited. The objection so strenuously urged at the argument, that the point where it is intended to connect the proposed siding "is unsafe and unfit for such connection," can be obviated by the parties selecting a point of connection where these elements of danger do not exist. It appears that the coal company "is willing that the connection shall be made in the mode and at the point the respondents prefer."

As all railroads are charged with the duty and obligation of transporting the freight offered along its line, and as this transportation of freight usually requires the use of sidings, the Supreme Court of Pennsylvania has held, in the case of Pittsburgh & Lake Erie Railroad v. Robinson, 95 Pa. 426, that a railroad company is a common carrier, and that its railroad is a public highway, and in duty bound to permit mill owners, mine owners, and others to construct on their land adjoining said railroad suitable switches for the use of their business, and to connect the same with the tracks of the company, subject to the general rules of the company regulating such connections, and that the railroad company is thereafter bound to receive and deliver to and from said switch or siding cars and freight for the parties so offering them on equal terms with all other individuals or transportation companies. Mr. Justice Gordon, in that case, said: "It being conceded that under the Pennsylvania acts of assembly the owners of mills and manufactories may of right connect their private sidings with the railroad in their vicinity," it follows that in case the railroad refuses to permit such connections when necessary some remedy must be found by which the rights of shippers can be enforced. Common carriers and public service corporations in general owe certain duties to the public. Individuals are entitled to enforce these obligations in so far as they are themselves concerned; and, when the legal remedies are inadequate, equity will grant its relief. Accordingly mandatory injunctions may be awarded to compel a common carrier to transport freight or to furnish transportation facilities. Pomeroy's Equity Remedies, § 633. In Wells, Fargo & Co. v. Northern Pacific Railroad Co. (C. C.) 23 Fed. 469, a bill was maintained to compel a railroad to furnish facilities to an express company, and, in the case of Butchers' & Drovers' Stockyard Co. v. Louisville & N. R. Co., 67 Fed. 35, 14 C. C. A. 290, the right to compel a railroad company to furnish facilities for loading and unloading live stock was held by Judge Taft to be enforceable by bill in the court of equity; and in Ex parte Lennon, 166 U. S. 556, 17 Sup. Ct. 661, 41 L. Ed. 1110, the Supreme Court held:

"That affirmative action may be required where the circumstances of the case demand it."

Numerous authorities are collected by Judge Evans of the District Court of Kentucky in Wiemer v. Louisville Water Co. (C. C.) 130 Fed. 251, in support of the proposition that a mandatory injunction is often resorted to in modern practice. They will be found on page 256 of 130 Fed. In this case the court compelled a water company to supply

water to one engaged in business after it had arbitrarily refused to do so upon his request.

Our conclusion is that the court below was right in adjudging the complainant to be entitled to such a connection as was claimed, and in awarding a mandatory injunction to compel the allowance of that right; but we think that the court below, in view of the importance of the matter to the public as well as to these parties, should be afforded an opportunity to further exercise its discretion respecting the question as to whether the point of connection proposed is one which, all things and especially the question of safety being considered, ought to be sanctioned.

Accordingly the decree of the Circuit Court is affirmed, but with leave to the defendants below to apply to that court to open the said decree for the purpose of further inquiry and determination touching the safety and convenience of the manner and point of connection proposed.