B. H. GRIFFIN v. GOLDSBORO WATER COMPANY.

(Decided May 24th, 1898).

*Corporation — City Franchise — Water Companies — Rates—Uniformity of Rates—Injunction.*

1. Where a corporation operates under a franchise by which it enjoys the benefit of the right of eminent domain, it is affected with a public use and must, to the extent of the public interest therein, submit to be controlled by the public.

2. While the right of fixing rates is a legislative function it is nevertheless competent for the Courts, certainly in the absence of legislative regulations, to protect the public against the exaction of oppressive and unreasonable charges by a corporation enjoying a municipal franchise.

3. The acceptance of a municipal franchise by a water company carries with it the duty of supplying water to all persons along the lines of its mains without discrimination and at uniform rates.

4. While a town has a right to grant a franchise to a water company, and the water company has the power to stipulate that it will not charge in excess of the maximum rates named in the ordinance granting the franchise, yet, if such maximum rates are discriminating or unreasonable, they are not binding upon consumers whom the Courts will protect against unreasonable charges.

5. Where, in the hearing of a motion to dissolve an order restraining a water company from exacting from the plaintiffs rates alleged to be unreasonable and discriminating, the answer admitted that the proposed rates were not uniform but denied that they were unreasonable and oppressive, and the evidence as to the unreasonableness of the rates was not satisfactory, it was not error to continue the injunction to the hearing.

CIVIL ACTION for an injunction, pending in WAYNE Superior Court and heard before *Timberlake, J.,* at CHAMBERS on 19th April, 1898, on a motion to dissolve a restraining order theretofore issued. His Honor continued the injunction to the hearing and defendant appealed.

*Messrs. Allen & Dortch,* for plaintiff.

*Mr. J. W. Hinsdale,* for defendant (appellant).

CLARK, J.: The defendant corporation is the owner of a plant which supplies water to Goldsboro and its inhabitants under a franchise granted by the city. It has no competition. The complaint alleges that to prevent competition the defendant reduced its rates largely to certain parties who threatened to establish a rival company, but not only did not make a corresponding reduction to the plaintiffs and other customers but proposes to put in meters whereby the rates to plaintiffs and others will be greatly increased, and threatens to cut off the water supply of the plaintiffs if they do not pay the increased rates, which will be to their great injury; that the rates charged by the corporation are not uniform and those charged the plaintiffs are unjust and unreasonable. The defendant denies, as a matter of fact, that the rates charged the plaintiffs are unreasonable and contends, as a proposition of law, that the company's rates are not required to be uniform and that it can discriminate in the rates it shall charge. It also relies upon the schedule of rates contained in the contract with the city and avers that the charges to the plaintiffs do not exceed the rates therein permitted.

The defendant corporation operates under the franchise from the city, which permits it to lay its pipes in the public streets and otherwise to take benefit of the right of eminent domain. Besides, from the very nature of its functions it is "affected with a public use." In *Munn v. Illinois,* 94 U. S., 113, which was a case in regard to regulating the charges of grain elevators, it was held that, in England from time immemorial and in this country from its first colonization, it has been cus-

tomary to regulate ferries, common carriers, hackmen, bakers, millers, public wharfingers, auctioneers, innkeepers and many other matters of like nature, and, where the owner of property devotes it to a use in which the public has an interest, he in effect grants to the public an interest in such use and must to the extent of that interest submit to be controlled by the public.

Probably the most familiar instances with us are the public mills whose tolls are fixed by statute, and railroad, telegraph and telephone companies, for the regulation of whose conduct and charges there is a State Commission, established by law. There have been reiterated decisions in the United States Supreme Court and in the several States affirming the doctrine laid down in *Munn* v. *Illinois, supra,* and as to every class of interest affected with a public use, among others, water companies. *Spring Valley* v. *Schottler,* 110 U. S., 347. The right of fixing rates is a legislative function which the Courts cannot exercise, but it is competent for the Courts, certainly in the absence of legislative regulations, to protect the public against the exaction of oppressive and unreasonable charges and discrimination. "The franchise of laying pipes through the city streets and selling water to the inhabitants being in the nature of a public use, or a natural monopoly, the company cannot act capriciously or oppressively, but must supply water to all impartially and at reasonable rates, and an injunction will issue to prevent the cutting off the water supply where the customer offers to pay a reasonable rate and the company demands an unreasonable one." 2 Beach Pri. Corp., Section 834 (c); *Munn* v. *Illinois, supra; Lumbard* v. *Stearns,* 4 Cush., 60. In the 29 A. & E. Enc., 19, it is said: "The acceptance by a water company of its

franchise carries with it the duty of supplying all persons along the lines of its mains, without discrimination, with the commodity which it was organized to furnish. All persons are entitled to have the same service on equal terms and at uniform rates." If this were not so, and if corporations existing by the grant of public franchises and supplying the great conveniences and necessities of modern city life, as water, gas, electric light, street cars and the like could charge any rates however unreasonable, and could at will favor certain individuals with low rates and charge others exorbitantly high or refuse service altogether, the business interests and the domestic comfort of every man would be at their mercy. They could kill the business of one and make alive that of another and instead of being a public agency created to promote the public comfort and welfare these corporations would be the masters of the cities they were established to serve. A few wealthy men might combine and, by threatening to establish competition, procure very low rates which the company might recoup by raising the price to others ont financially able to resist—the very class which most needs the protection of the law—and that very condition is averred in this complaint. The law will not and cannot tolerate discrimination in the charges of these quasi-public corporations. There must be equality of rights to all and special privileges to none, and if this is violated, or unreasonable rates are charged, the humblest citizen has the right to invoke the protection of the laws equally with any other.

While the defendant cannot charge more than the rates stipulated in the ordinance granting it the franchise, because granted upon that condition, those rates

122—14

are not binding upon consumers who have a right to the protection of the Courts against unreasonable charges. Since the Constitution of 1868, Article VIII, Section 1, if the rates had been prescribed in a charter granted by the Legislature, they would be subject to revocation, and indeed independently of that constitutional provision (*Stone* v. *Farmer's Co.*, 116 U. S., 307: *R. Co.* v. *Miller*, 132 U. S., 75: *Chicago* v. *Munn*, 134 U. S., 418; *Georgia* v. *Smith*, 70 Ga., 694; *Winchester* v. *Croxton*, 98 Ky., 739,) still less can these rates bind consumers (if unreasonable or discriminating) since the town had authority to grant the franchise but not to stipulate for rates binding upon the citizens. The Legislature did not confer that power. The rates are binding upon the company as a maximum simply because acting for itself it had the power to accept the franchise upon those conditions.

Singularly enough it appears incidentally in the evidence furnished by the defendant that in the towns in North Carolina which do not own their water works, the maximum rates charged consumers are from 100 to 400 per cent more than the maximum rates charged consumers in Wilson, Asheville and Winston, the only towns which own their water works.

The allegations of fact that the rates are unreasonable and, oppressive are denied. That they are not uniform is not denied and the defendant contended that it had the right to discriminate, which cannot be sustained. On the final hearing the cost and value of the property will be material in determining as to the reasonableness of the rates charged. *Smythe* v. *Ames*, (known as the "Nebraska Case") U. S. Supreme Court, 1898. The evidence offered on that point on the hearing below is not satisfactory, the mere amount of

mortgage bonds issued on the property being no reliable guide to the Courts as to the true value of the investment. It may be, as sometimes happens, that the bonds and stocks are watered. Nor is the evidence of the cost of construction and operation conclusive, as has often been held, for it may be that the work was extravagantly constructed or is operated under inefficient management and the public are not called on to pay interest upon such expenditures, in the shape of unreasonable or extortionate rates. *Missouri* v. *Smith*, 60 Ark., 221; *Chicago* v. *Wellman*, 143 U. S., 339; *Livingstone* v. *Sanford*, 164 U. S., 578.

The Court below properly continued the cause to the hearing.

No error.