# City of Mobile *et al. v.* Bienville Water Supply Co.

## *Bill in Equity for Injunction.*

1. *Water company; right of courts to prevent discrimination.* The acceptance by a water company of its franchise carries with it the duty of supplying all persons along the lines of its mains with the commodity which it was organized to furnish, on equal terms and under uniform rates; and in the absence of legislative regulation, it is competent for courts of equity to interfere to protect the public against unreasonable charges and discriminations.

2. *Same: city operating water works and sewers can not discriminate in its charges for the use thereof.*—On a bill filed by a water company against the city of Mobile, it was averred that the complainant was a corporation chartered by the General Assembly of the State and was operating its water works in the city of Mobile, supplying water to its customers in said city for family use, sewerage and other purposes; that by act of the legislature said city was authorized to construct a system of water works and sewers for the use of itself and its inhabitants, and was empowered to collect such rates for water supplied for the use of such sewers as should be sufficient to pay the interest on the bonds issued by it, for the purposes above mentioned. That by a subsequent act of the legislature, the city was empowered to compel connection with its sewers and for the use thereof to fix and charge reasonable rates, for the purpose of maintaining and operating said sewer system. That at the time of the filing of the bill the city was operating its system, but that it had never fixed any rate for the use of its sewers alone, that it would not allow any customers of complainants' water to connect with or use its sewers, except at the same price as the city charged for both its water and sewers together, that in many other ways the city discriminated against the complainant, making it in fact lose its customers by reason of the double charges so imposed, and that through its officers and agents, the city was able to enforce its unjust regulations and prohibit the customers of complainant from connecting with the city's sewers. That such regulations and acts on the part of the city were unjust discriminations of the charges for sewers, not only against the complainant and its customers, but against all consumers of

[City of Mobile *et al.* v. Bienville Water Supply Co.]

water in said city. It was also averred that the city was insolvent. *Held*: (1.) That said bill is not subject to demurrer upon the ground that the acts complained of were unlawful and voia acts of the officers and agents of the city, for which the city was not responsible; the city being able to commit the alleged wrongs in no other way except through its agents and officers. (2.) That no charge or rate for the use of its sewers having been fixed by ordinance of the city, as the city was authorized in its charter to do, the said charges or rates alleged to have been imposed upon the consumers of the complainant, working a discrimination in charges against them, were without authority and the city could be restrained from imposing them. (3.) That in such case, the complainant being a party injured and entitled to protection of his rights and privileges under its charter, could maintain a bill to restrain the alleged unjust discriminations complained of. (4.) That under the facts as averred in such case, a court of equity will enjoin the city from the perpetration of the wrongs complained of.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by the appellee, the Bienville Water Supply Company, against the City of Mobile, J. Curtis Bush, as the mayor of said city, and Michael Sullivan, as superintendent of the Mobile City Water Works Company. The bill was filed on May 25, 1900. Upon the demurrers interposed thereto being sustained, the bill was amended on October 6, 1900.

As amended, the bill seeks to prohibit the city from discriminating against the Bienville Water Supply Company and its water consumers in the rates of charges for the sewers which belong to the city, and to prohibit the city from charging the water consumers of the Beinville water for the use of the city sewers any more, or a higher rate than is charged by the city to its own water consumers for the use of its sewers; and also to restrain the city from charging the same price for the use of both its water and sewers as it does for its water alone; and further to enjoin the city of Mobile from charging to or collecting from the Bienville Water Company and its water consumers any sum whatever until it has by ordinance established and fixed a rate of charges for the tapping and use of its sewers. The

averments of the bill are sufficiently stated in the opinion.

The prayer of the bill as amended was in words and figures as follows: "That your honor will prohibit the defendants, their officers, agents and employees from discriminating against your orator and its customers and water consumers in rates of charges for the use of the city sewers, and that your honor will restrain and prohibit the defendants, their officers, agents and employees, from charging orator's customers and water consumers for the use of the city's sewer or sewerage system any more than they charge the customers and water consumers of the city's water for such sewer service alone, and restrain the city from charging the same price for the use of its sewers and sewerage system as it does for the use of both its sewers and water together, and that your honor will prohibit and enjoin the city of Mobile, its officers, agents and employees, from charging to or collecting from your orator or its customers and consumers of water any sum or sums whatever until it has by law or ordinance establishel and fixed a rate of charges for the tapping and use of the city's sewers and sewerage system, and that your honor will grant your orator such other and further or other and different relief as the nature of its case may require and as in equity and good conscience it ought to have."

To the bill as amended there were nine grounds of demurrer interposed. Demurrers 1, 2, 3, 4 and 5 raise the question that the city by reason of its not having passed an ordinance to that effect, has no legal authority to charge for the tapping and use of its sewers, and that all persons are charged with this knowledge of the law, and hence that such acts as are charged in the bill are void, and that the city can not be made or held liable therefor. Demurrer 6 raises objection to the bill because it does not allege that the complainant has been charged anything for using the sewers, and hence it does not show that the city has committed any breach of duty to it. Demurrers 7, 8 and 9 raise the objection to the bill that the acts and doings charged were in violation of the rights of citizens and consumers, but that no such acts are charged as violating any rights

of the complainant; and that, therefore, complainant can not maintain the present bill.

On the submission of the cause upon the demurrers, the chancellor rendered a decree overruling them. From this decree the defendant appeals, and assigns the rendition thereof as error.

B. B. BOONE, for appellant.—The city could act only through its officers and agents; and persons dealing with municipal corporations are held to know the extent of the power of their officers and agents.—*Clark v. Des Moines*, 18 Iowa 199, 87 Am. Dec. 425. If these servants and agents had made a contract in violation of law it would not have been binding upon the city.—1 Beach on Public Corporations, § 244.

The complainant can not maintain this suit against appellants, no right or duty being alleged to have been disregarded or broken.—*Postal Tel. Cable Co. v. Ford*, 117 Ala. 676; *Lawrence v. Fox*, 20 N. Y. 268; *Garsney v. Rogers*, 47 N. Y. 233, s. c. 7 Am. Rep. 440; *Vrooman v. Turner*, 69 N. Y. 280; *R. R. Co. v. Curtis*, 80 N. Y. 219; *Ferris v. Carson W. Co.*, 40 Am. Rep. 487; *Davis v. Clinton Water Works*, 54 Iowa 59; *Nickerson v. Bridgeport Hydraulic Co.*, 46 Conn. 24, s. c. 33 Am. Rep. 1; *Wright v. Terry*, 2 So. Rep. 8; *Barton v. Larkin*, 59 Am. Rep. 541; *Pugh v. Barnes*, 108 Ala. 170.

BESTOR, GRAY & BESTOR and R. H. CLARKE, *contra.* The bill alleges discriminations in charges: one using sewers alone charged as much as one using both water and sewers. A water works company can not lawfully make such a discrimination.—*Griffin v. Goldsborough*, 122 N. C. 206; 29 Am. & Eng. Ency. Law (1st ed.) 19. In its ownership and operation of water works, the municipal corporation stands upon the same footing as a private corporation.—*Bailey v. New York*, 3 Hill 351, 38 Am. Dec. 669; *Small v. Danville*, 51 Me. 359; *Philadelphia v. Fox*, 64 Pa. 180; *Wet. Sav. Soc. v. Philadelphia*, 31 Pa. 183, 72 Am. Dec. 730.

The complainant was entitled to maintain the present bill. It had a right to ask for the protection of its privileges which were alleged to have been infringed.

*Reagan v. Farmers' L. & T. Co.,* 154 U. S. 362; *Wisconsin R. Imp. Co. v. Lyons,* 30 Wis. 61; *Walker v. Shepardson,* 2 Wis. 291; *Skaneateles v. Skaneateles,* 161 N. Y. 154; *Frank v. Paducah Water Supply Co.,* 4 L. R. A. 265.

The city can only exercise its authorized powers in the manner prescribed by law, and if it misuses such powers, the court of equity can interfere.—Green's Brice's Ultra Vires, 707 and note; 1 Dillon on Munic. Corp., §§ 253, 256, 262; 15 Am. & Eng. Ency. Law (1st ed.) 1041, 1042; Code, § 2950, par. 1 subs. 6 and 12; *N. O. R. R. v. Dunn,* 51 Ala. 128; 17 Am. & Eng. Ency. Law, 248, 253-254.

HARALSON, J.—1. It cannot be pretended, that in granting a charter to the complainant company in 1883, the legislature conferred on that company any exclusive privilege for supplying the city of Mobile and its inhabitants with water. All rights not exclusively granted to the complainant, were reserved and the rights thus reserved included the granting of a franchise to another corporation to carry on the same business in the same territory. While the effect of granting such a franchise, afterwards, to the city, might be to impair and possibly by fair competition to ultimately largely destroy the value of complainant's plant, it would not be in excess of legislative power to grant the franchise to the city, nor would it in any wise infringe the federal constitution, prohibiting a State legislature from passing laws impairing its obligations. If there is no contract, there is nothing in the grant on which the constitution could act. The element of a contract by the state with the complainant company, did not enter into the grant of its franchise to establish and operate a system of waterworks in Mobile.—*Stone v. Mississippi* 101 U. S. 811; *Skaneatles Waterworks Co. v. Village of Skaneatcles,* 161 N. Y. 154; *Charles River Bridge v. Warner Bridge,* 11 Pet. 420; *State v. Hamilton, Ohio,* 23 N. E. 935; *Scranton Electric Light & Heat Co.'s Appeal,* 122 Pa. St. 154; 2 Beach, Priv. Corp. §§ 22, 27.

2. The right of the legislature to fix rates, which the courts cannot exercise, seems to be well understood.

But in the absence of legislative regulations, it is competent for the courts to interfere to protect the public against unreasonable charges and discriminations. *Reagan v. Farmers' Loan & Trust Co.,* 154 U. S. 362, 398; *Waterworks v. Schottler,* 110 U. S. 347; *Munn v. Illinois,* 94 U. S. 113.

Mr. Beach, touching this question, observes: "The franchise of laying pipes through city streets and selling water to the inhabitants thereof, being in the nature of a public use, or natural monopoly, carries with it the duty to supply water to all impartially and at reasonable rates; * * * and an injunction may be issued to prevent it from cutting off its water supply, when the customer has offered to pay in advance the proper amount for the use of the water during the year, and the company claims a higher rate than is usually due and exigible."—2 Beach, Mun. Corp. 834 (c.)

In the 29th Am. & Eng. Enc. Law (1st ed.), p. 19, it is said: "The acceptance by a water company of its franchises, carries with it the duty of supplying all persons along the lines of its mains, without discrimination, with the commodity which it was organized to furnish. All persons are entitled to have the same service on equal terms and on uniform rates."

The principle announced is reasonable and necessary. Without it, the business interests and domestic comfort of the community, so far as dependent on supplies such companies furnish, would be at their mercy, and make them masters in this regard, of the city they were established to serve. As said by the Supreme Court of North Carolina, "A few wealthy men might combine and by threatening to establish competition, procure very low rates which the company might recoup by raising prices to others not financially able to resist— the very class which most needs the protection of the law. The law will not and cannot tolerate discrimination in the charges of these quasi-public corporations. There must be equality of rights to all and special privileges to none, and if this is violated, or unreasonable rates are charged, the humblest citizen has the right to invoke the protection of the laws equally with any

other."—*Griffin v. Water Co.,* 122 N. C. 206.    Such works are established for the promotion of the public health, for the prevention of diseases and spread of the same, and for the comfort and convenience of all the inhabitants alike, and in which all are alike interested.

3.   The bill alleges, that complainant is a corporation chartered by the State for the purpose of supplying and selling water to the city of Mobile and to its inhabitants; that it has laid its mains and pipes in the streets of the city and established its plant at an expense of over $800,000, and is supplying water to customers in the city for family use, sewerage and other purposes; that the city of Mobile, by an act of the 30th November, 1898, was authorized to construct a system of waterworks and sewers for the use of itself and its inhabitants, and was empowered to collect such rates for water supplied for the use of said sewerage system as shall be sufficient to pay the interest on the bonds issued by it for the purpose of providing said waterworks and sewerage systems and the expenses necessary for operating, such rate not to exceed the usual and customary rates charged by other cities similarly situated for like service.

It was further shown, that by act February 15, 1899, entitled "An act, to promote the health of the city of Mobile," etc., (Acts 1898-99, p. 895), the city was empowered to compel connections with its sewers, and for the use thereof, "to fix and charge such reasonable rates for the purpose of maintaining and operating said sewerage system, and paying the interest on the bonds issued by the city of Mobile to build said sewerage system, as said mayor and general council may deem proper;" that it was empowered by another act (Acts 1898-99, p. 16), to issue $750,000 of bonds, secured by mortgage on its water and sewerage system, of which $500,000 was to be used for buying or building waterworks, and $250,000 for buying or building sewers; that it has issued and sold said bonds and built both systems, expending over $500,000 for the water system, and not over $200,000 for the sewer system; that it is operating both systems, and from its

waterworks is furnishing water to itself and its inhabitants, and is supplying water on about 20 miles of streets upon which there are no sewers.

The averment is made, that the city has never fixed any rate for the use of its sewers alone, but it will not allow any customers of complainant's water to connect with or use its sewers, except at the same price as the city charges for both its water and sewers together, in effect forcing its citizens and inhabitants to take the water of the city, or to pay for the water of complainant in addition to what each citizen would have to pay for the city's water and sewerage together, discriminating, as is alleged, against complainant and making it, in effect, furnish water for nothing, or to lose its customers by reason of the double charge so imposed on them; that the city through its officers and agents, threaten the people of Mobile, that they will not be allowed to use the sewers, unless they subscribe for and take the city water, and that they will not be allowed to use the water of complainant in connection with the city's sewers; that the city has the physical power, by means of its police force, to enforce this threat, and it is thus intimidating the customers of complainant, and compelling them to leave complainant and take the water from the city waterworks, and upon their desiring to return, the city, through its officers, have refused to let them disconnect from the city's pipes or to connect with complainant's.

It is further averred, that the city charges its own customers on streets where there is no sewer service, the same rate that it charges others for both water and sewers, along streets where said sewers are laid, which, it is alleged, is a discrimination in charges for sewerage, not only against complainant and its customers of water, but also against all consumers of water and customers of the city, not on streets or lines where the sewers are laid.

It is also averred that the city is insolvent, so that nothing can be made out of it by execution at law.

4.   The first, second, third, fourth and fifth grounds of demurrer to the amended bill may be grouped as

raising in different forms, the same question. To state the contention of defendant in the language of counsel, these "grounds of demurrer challenge the sufficiency of the bill as amended, upon the ground that the bill shows that the servants and agents of the city exceeded their power and authority [and] should have been sustained," the contention being "that said acts and doings of said officers and agents as charged in said bill as amended, were void and not binding upon the city of Mobile." The bill alleges, however, very distinctly that the city is committing the wrongs complained of through its officers and agents, a fact the grounds of demurrer specified clearly overlook. The city could, of course, commit the alleged wrongs in no other way, except through its agents and officers. If the acts of the city are warranted by law, it could not be enjoined from committing them. The wrongfulness of these acts are, therefore, the only predicate for relief.

5. The other ground of demurrer to the original, refiled to the amended bill, and those added to the bill as amended, raise the more serious question to be decided.

From the facts of the case, as above recited, if true,—as they must be taken on demurrer,—it distinctly appears, that the city, while it has the authority to do so, has never, by ordinance, fixed any charge or rate for the use of its sewers, and, indeed, is making no charge to its own customers for the use of the same; that it charges any one using its water alone, as much as it charges another for the use of both water and sewer; and against those who use the complainant's water, it charges for sewer service, alone, as much as it charges its own customers for both water and sewerage,—thus making its sewers free to those who use its water, while it imposes on complainant's customers a discriminating and onerous charge for the use of its sewers,—as much, as is alleged, as it charges for its own water, and sewerage in addition. Whether intended by the city to so operate or not, one can scarcely conceive of a more effective scheme to deprive the complainant of its customers than the one alleged in the bill. If complainant has to furnish its customers with water, and they are required by the city to pay for

sewerage, the same price it charges its own customers for its water and sewerage, it follows the complainant would have to furnish water practically free or abandon the business; for it would be unreasonable to suppose, that any one would use the complainant's water, and bear the additional expense imposed for so doing. These sewers of the city are for the public at large, and every one should be permitted to use them, without any discrimination in charges against him. The franchise to construct sewers being in the nature of a public use, the duty is on the city to supply sewerage rates to all impartially on reasonable terms. As is said by Mr. Bates, "All persons are entitled to have the same service on equal terms and on uniform rates." In addition, it is averred, as seen, that citizens are notified by the city, that they cannot use the sewers unless they subscribe for the city water, and customers of complainant, desiring to return to it, are forbidden by the city from disconnecting from its pipes and connecting with complainant's,—a threat the city has the physical power to enforce.

If these wrongs exist, they should be remedied. The complainant is far more interested and injured than any one of all of its customers. It cannot live and enjoy the rights and privileges bestowed on it by its charter, if by unjust discriminations on the part of the city in operating its sewer system, its customers are taken from it. Its customers might not be willing to incur the trouble and odium of litigation to redress the private wrongs thus done to them, even at complainant's expense. But, complainant itself, has rights which should be protected against such alleged wrongs, and is entitled to seek redress in its own name. The city should, on considerations of highest equity and justice, as by its charter it is authorized to do, fix a rate for sewer service, distinct from the rate fixed for the use of its water, and this rate should be the same to all persons, including the complainant and its customers, or, it should make them free to all, without discrimination. In other words, these sewers should be used to promote the public health, as free to one person as another, or

open to all, if any rate of charges is fixed, on equal terms, and on uniform charges for their use. No more than this can be justly and legally claimed by the city under its authority from the legislature, to establish its sewer system.

6.   The complainant is entitled, upon the facts stated, to the restraining power of a court of equity, to remedy the wrongs of which it complains. These continuing wrongs must work irreparable injury, and, as is alleged, the city, the perpetrator of the wrongs, is insolvent.—High, Inj. §§ 1236, 1275; 3 Pom. Eq. Jur. § 1368.

There was no error in overruling the demurrer to the bill.

Affirmed.