# Birmingham Water Works Company *v.* Brown.

## *Damages for Cutting Off Water Supply.*

(Decided December 17, 1914. 67 South. 613.)

1. *Waters and Watercourses; Ordinance Contract; Legality.*— Where an ordinance provided a flat rate for water furnished the residences as the maximum rate which could be charged by the water company for such service, no reduction would be valid which did not operate alike on all in the same class, although the rate might be lawfully reduced, and while the company had not surrendered its right to exact such flat rate, and no other rate had been legally provided, its contract to furnish plaintiff's residence meter service for less than the residence rate, and less than the rate charged others for similar service, was illegal and invalid.

2. *Same; Rates; Discrimination.*—Where the ordinance fixed a maximum flat rate for residences, it was intended that there should not be any discrimination by the company in its service to inhabitants of the city of the same class, as the general rule is that a corporation or municipality authorized to furnish water to city residents may not discriminate as to the rates charged, at least among those of the same class, as stability and equality of rates on the part of the public service corporation are more important than reduced rates.

3. *Same.*—A water company operating under an ordinance contract is not a private, but a quasi public corporation, and must exercise its opportunities for gain subject to the obligations to supply water without unjust discrimination, and at uniform rates to all on its lines who apply for service and tender a reasonable compensation, and without discrimination in favor of or against any citizen or number of citizens, and if any special privileges are given or equality of rights denied, or unreasonable rates charged, any citizen may invoke the protection of the court.

4. *Same.*—Where a water company was required by ordinance to furnish service to residences at a fixed maximum flat rate, a contract to furnish plaintiff's residence with meter service at less than the maximum rate and less than the rate charged others for similar service, was void, and could not be upheld in favor of plaintiff by invoking defendant's estoppel to insist upon its invalidity.

(Sayre, J., dissents.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. JOHN C. PUGH.

Action by Mary B. Brown against Birmingham Waterworks Company, for damages for cutting off water

supply. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

LONDON & FITTS, for appellant.

A. G. & E. D. SMITH, for appellee.

DE GRAFFENRIED, J.—This is the second appeal in this case. On the first appeal this court upheld, as valid, the contract which is the basis of this suit.— *Brown v. Birmingham Waterworks Company*, 169 Ala. 230, 52 South. 915.

One of the principal questions presented on this appeal is whether this court, on the first appeal, was correct in upholding the contract as valid. For this reason, as well as on account of the extreme importance of this case, the record has been carefully examined in consultation by the full bench, and this opinion is written for the purpose of expressing the views of those members of the court who appear as concurring in the opinion.

(1) In the case of *Smith v. Birmingham Waterworks Company*, 104 Ala. 315, 16 South. 123, this court said: "The only cases in which water furnished to the 'inhabitants' is not to be charged for by measurement are specified in the first part of section 12, supra, and include only 'dwellings,' and then for 'water-closets' and 'bath tubs' for private families. For these the contract fixes a definite amount for water furnished without regard to measurement. We would not be understood as holding that the designated classes could abuse the privileges by unnecessary extravagance or waste of water; but for the use of water in reasonable quantities, sufficient without inconvenient economy for the purposes mentioned, the rates are fixed."

[Birmingham Water Works Company v. Brown.]

(1) The above opinion was rendered by a court which is regarded by the profession as one of exceptional ability, and since the rendition of that opinion this court has not—except in the opinion rendered on the first appeal in this case—upheld as legal any contract covering rates for water furnished by the water company to residences in the city of Birmingham which did not conform to the ordinance contract made by the water company with the city of Birmingham as construed in the above case. The flat rate provided in said ordinance contract for residences is the maximum rate which can be charged by the water company for water furnished to residences, and while undoubtedly that rate may be lawfully reduced, no reduction can be upheld which is not operative alike upon all who occupy the same class and which is not discriminatory in its character.—*Birmingham Waterworks Company v. Mayor, etc., of Birmingham,* 42 South. 10; *Birmingham Waterworks Co. v. Truss,* 135 Ala. 530, 33 South. 657; *City of Mobile v. Bienville Water Supply Co.,* 130 Ala. 384, 30 South. 445.

In the above case of *Birmingham Waterworks Company v. Mayor, etc., of Birmingham,* 42 South. 10, this court, in holding that the city court of Birmingham, sitting in equity, erred in sustaining the demurrer to paragraph J of the bill of complaint in that case, in reality declared that contracts containing stipulations similar to those contained in the contract now under consideration were illegal. On the former appeal in this case this court, in the effort to sustain the contract now under consideration, said: "The second proposition is that a condition could arise under the provisions of said contract where a greater charge could be made by defendant than that provided by the maximum rate; that is, that the rate provided for wa-

ter in excess of 3,333 ·gallons per month is such that
the excess could be large enough to make the rate great-
er than the maximum rate fixed by the franchise con-
tract. We think it a sufficient answer to this argument
to say that the parties contracted with full knowledge
of what the franchise contract provided, as well as the
law, and what limitations the same imposed, and that
a proper construction of the contract between appellant
and appellee would be that there was implied the fol-
lowing: 'Provided, that the charge for water shall in
no case be greater than the maximum provided by said
franchise contract, and, provided further, that it shall
not be greater than what is a reasonable charge."

The contract which is made the basis of this suit con-
tains plain provisions to pay for *all* water in excess
of 3,333 gallons per month "by the regular schedule
of meter rates, which are made a part of this applica-
tion and agreement. In other words, the contract now
under consideration contains, as already stated, provi-
sions substantially identical with those which were de-
scribed in paragraph J of the bill of complaint con-
sidered in *Birmingham Waterworks Co. v. Mayor, etc.,
of Birmingham, supra,* and which were in that case,
in effect, condemned as illegal. We find nothing in this
record indicating that since the rendition of the opin-
ion in *Smith v. Birmingham Waterworks Company,
supra,* the water company has surrendered the right
to exact the flat rates which are provided in the ordi-
nance contract for residences in the city of Birming-
ham, or that any other rate has been legally provided
for such residences in the city of Birmingham, or that
any other rate has been legally provided for such resi-
dences, and, this being true, these rates are, in so far
as the evidence in this record discloses, the only rates
which the water company has the right of offer to, or

exact of, its customers in the city of Birmingham.—
*Smith v. Birmingham Waterworks Co., supra; Birmingham Waterworks Co. v. Mayor, etc., of Birmingham,
supra; Birmingham Waterworks Co. v. Truss, supra;
City of Bessemer v. Bessemer City Waterworks,* 152
Ala. 391, 44 South. 663; *Crosby v. City Council of Montgomery,* 108 Ala. 498, 18 South. 723; 3 Dillon on Mun.
Corp. (5th Ed.), p. 2236, § 1236. In fact, the contract
now under consideration is a contract which this court
in *Smith v. Waterworks Co., supra,* expressly declared
the waterworks company had no authority, under its
ordinance contract, to make with its customers.

2. In the opinion on the first appeal this court said
that: The "Birmingham Waterworks Company had a
right to contract with an individual to furnish water
at a less rate than the maximum rate fixed by said franchise contract, and less than that charged other individuals for similar service so long as the discrimination is enjoyed by those having the favored rate at the
expense of the company, and does not impinge upon
any rights of other consumers."

This statement was based upon some expressions
which are to be found in *State ex rel. C. W. Ferguson
v. Birmingham Waterworks Company,* 164 Ala. 586, 51
South. 354, 27 L. R. A. (N. S.) 674, 137 Am. St. Rep.
69, 20 Ann. Cas. 951. In that case there was a petition for a writ of mandamus, wherein it was claimed
that the company had entered into contract with some
consumers similarly situated with the relator, by which
it had undertaken to furnish to them water at a rate
less than the maximum charges allowed by the ordinance contract. The relator did not claim that he was
charged more than the maximum rate, nor that he was
charged more than a reasonable price for the water furnished him, but he contended that he was entitled to

receive water at the most favorable rate furnished to any others similarly situated. Upon these allegations of the petition for the writ of dandamus this court held that the relator was not entitled to the writ.

In the opinion in that case this court, after declaring that "the business of a company furnishing water to the public is naturally monopolistic and, being given the power of eminent domain to serve the needs of the public more effectually, must serve all consumers with equal facilities without discrimination," indicated that a contract made by the Birmingham Waterworks Company with a favored customer at a rate less than the rate fixed for residences, etc., by the ordinance contract as construed in *Smith v. Birmingham Waterworks Company, supra,* and at a rate less than that charged its other customers, might, under certain circumstances, be upheld.

(2) This case of *State ex rel. Ferguson v. Waterworks Company, supra,* is reported in 164 Ala. 586, 51 South. 354, 27 L. R. A. (N. S.) 674, 137 Am. St. Rep. 69, 20 Ann. Cas. 951, and in a note to that case (27 L. R. A. [N. S.] page 674) we find the following: "It may be stated as a general proposition that a corporation or municipality authorized to supply water or light to the inhabitants of a municipality may not discriminate as to the rates charged, at least among those of the same class."

Cited, as sustaining the above propositions, we find in this note the following cases: *Danville v. Danville Water Co.,* 180 Ill. 235, 54 N. E. 224; *State ex rel. Latshaw v. Water & Light Com'n,* 105 Minn. 472; 117 N. W. 827, 127 Am. St. Rep. 581; *Griffin v. Goldsboro Water Co.,* 122 N. C. 206, 30 S. E. 319, 41 L. R. A. 240; *Armour Packing Co. v. Edison Electric Illuminating Co.,* 115 App. Div. 51, 100 N. Y. Supp. 605; *Cin-*

*cinnati, H. & D. R. R. Co. v. Bowling Green*, 57 Ohio St. 336, 49 N. E. 121, 41 L. R. A. 422; *Mobile v. Bienville Water Supply Co.*, 130 Ala. 379, 30 South. 445; *Snell v. Clinton Electric Light, H. & P. Co.*, 196 Ill. 626, 63 N. E. 1082, 58 L. R. A. 284, 89 Am. St. Rep. 341.

When the city of Birmingham made its contract with the waterworks company it intended—and the contract so provides—that there should not be *any* discrimination made by the waterworks company in the matter of supplying water to the inhabitants of the city of the same class. The maximum rates provided for residences are specific and certain. Stability and equality of rates on the part of a public service corporation are more important than reduced rates. It was the fact that without a contract fixing the rates for water there would probable be instability and inequality of rates, and out of this instability and inequality, unjust discrimination, and other unlawful practices with reference to such rates, the city of Birmingham exacted the contract with appellant, and by that contract fixed a definite, uniform maximum rate for residences in said city. The law must see that all citizens of the same class receive the same treatment at the hands of public service corporations, and the spirit which controlled the city of Birmingham in exacting this contract from the waterworks company was the same spirit which actuated the Congress of the United States in its legislation with reference to tariffs for freight transported by carriers engaged in interstate commerce. On that subject we quote the following from *A. J. Poor v. Chicago, Burlington & Quincy R. R. Co. et al.*, 12 Int. Com. Com'n Rep. 418: "Stability and equality of rates are more important to commercial interest than reduced rates. It was instability and inequality that were the

special evils to be remedied; it was the possibility that one shipper, in one way or another, whether by mistake or otherwise, could, and actually did, get a lower rate than another shipper that led to more stringent legislation."

The case of *Louisville & Nashville Railroad Company v. McMullen,* 5 Ala. App. 662, 59 South. 683, in which the opinion of the Court of Appeals was prepared by the writer, deals with the many questions which are now under consideration, and cites some of the authorities which are pertinent to the subject now in hand. That the members of the public are entitled under the law to receive uniformity of treatment at the hands of public service corporations, and that contracts not partaking of a private nature, between public service corporations and some members of the public, whereby special privileges are obtained which are not commendable as matter of right by all other members of the public of the same class, will not be upheld, have become truisms of the law; and the trend of modern legislation, state and federal, in so far as public service corporations are concerned, has been largely to that important end. That one member of the public of a particular class shall not be accorded the same identical treatment that is accorded to another member of the public of the same class, by a public service corporation, is not only not in harmony with an enlightened sense of right and fair play, but is opposed to the true reasons upon which such corporations are given their franchises and are permitted to exist. Indeed, whenever inequality in such treatment is attempted by a public service corporation, dissatisfaction is the necessary result, and this dissatisfaction ultimately finds expression in unpleasant and expensive litigation.

[Birmingham Water Works Company v. Brown.]

The city of Birmingham, when it made the contract with the waterworks company which was construed by this court in *Smith v. Waterworks Company, supra,* was acting for all of the inhabitants of the municipality. While, in *State ex rel. Ferguson v. Waterworks Company, supra,* this court stated that, under certain conditions, the Birmingham Waterworks Company might vary the terms of the contract which it made with the city for the benefit of some favored customer, the authorities cited in the note to that case, as it appears in 27 L. R. A. (N. S.) 674, will show with what sparingness the courts of last resort are willing to uphold contracts made with public service corporations which confer special favors upon individuals with whom they deal as servants of the public.

The pronouncement of the courts in the cases above cited, and the undisputed facts in the instant case, all show the wisdom of the courts in rigidly holding public service corporations, in their dealings with the public, to uniformity in rates. In the instant case, a contract by meter rates was entered into. The customer complied with the letter of her contract and tendered to the water company the amount due under the terms of her contract. This amount the company refused to accept, demanding the amount which, under the flat rate, was due to it. The customer, believing herself entitled to the benefits of the meter contract which she had made with the company, refused to comply with the demands of the company and thereupon the company cut its water from her residence. This act on the part of the company has caused the plaintiff great annoyance, inconvenience, and suffering, and in addition to this the present resulting litigation has caused expense and annoyance to all of the parties concerned. This record discloses that the plaintiff is not the only

30—I91

party in Birmingham with whom the water company has made a contract similar to that of the plaintiff, and all of the annoyance, inconvenience, and suffering which was occasioned the plaintiff by being denied the defendant's water, have been due to the lack of observance by the defendant and some of its customers of the above salutary rules which have been so plainly announced by this court in a large number of its decisions.

If contracts of this character are to be upheld and made the basis of recovery in an action at law, then uniformity of water rates in the municipality of Birmingham disappears, and the water company may discriminate among its customers as it pleases. This the law will not permit it to do.—*Smith v. Birmingham Waterworks Co., supra; Birmingham Waterworks Co. v. Mayor, etc., of Birmingham, supra; Griffin v. Goldsboro Water Co., supra.*

3. That there is a divergence of views among the courts of last resort on the question as to whether, at common law, a public service corporation was under the necessity of furnishing to its customers of the same class the same identical rates there can be no doubt. ⊢—*Ernest St. George Lough et al. v. Outerbridge et al.,* 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 712; *L. & E. & St. L. Con. R. Co. v. Wilson,* 132 Ind. 517, 32 N. E. 311, 18 L. R. A. 105: *Cowden v. Pacific Coast S. S. Co.,* 94 Cal. 470, 29 Pac. 873, 18 L. R. A. 221, 28 Am. St. Rep. 142; *Griffin v. Goldsboro Water Co., supra.* An examination of those cases as above reported, including the notes and the cases cited in the briefs of counsel, will disclose the conflict to which we refer.

(3) The question, however, was set at rest, in so far as this state and franchise contract of the Birmingham

Waterworks Company are concerned, by this court, in *Birmingham Waterworks Company v. Mayor, etc., of Birmingham, supra.* In that case this court said: "An examination of the contract clearly shows that it was the intention of the parties to secure to the citizens of Birmingham water at reasonable and uniform rates, without discrimination in favor of or against any citizen or number of citizens. This was one of the objects sought to be accomplished by the parties. Not only was this a moral duty, but it was a duty imperatively demanded of them by the law. A water company acts not as a private, but a quasi public, corporation. It enjoys and must exercise its opportunities for gain, subject to its obligation to the public that it will supply water without unjust discrimination and at uniform rates to all those along the lines of its mains, who apply and tender a reasonable compensation.'—20 A. & Eng. Ency. Law (2d Ed.) 426. Referring to the principle above announced, in the case of the *City of Mobile v. Bienville Water Supply Co.,* 130 Ala. 384, 30 South. 447, it is said: 'The principle announced is reasonable and necessary. Without it the business interests and domestic comfort of the community, so far as dependent on supplies such companies furnish, would be at their mercy and make them masters, in this regard, of the city they were established to serve. As said by the Supreme Court of North Carolina: "A few wealthy men might combine and, by threatening to establish competition, procure very low rates, which the company might recoup by raising the price to others not financially able to resist—the very class which most needs protection of the law. The law will not and cannot tolerate discrimination in the charges of these quasi public corporations. There must be equality of rights to all and special privileges to none; and, if this

is violated or unreasonable rates are charged, the humblest citizen has the right to invoke the protection of the laws equally with any other."—*Griffin v. Water Co.,* 122 N. C. 206, 30 S. E. 319, 41 L. R. A. 240.' It will thus be seen that the complainant and respondent were without power to make a contract providing for unreasonable rates or rates not uniform to consumers; nor could they make a contract that would permit discrimination in favor of certain citizens and against others."

See further on the above subject *City of Montgomery v. Greene,* 180 Ala. 322, 60 South. 900, in which the above doctrine is reaffirmed.

4. (4) The opinion on the first appeal in this case was prepared for this court by a careful and painstaking judge, and was, after consultation, adopted as the law of this case. It may be that it failed to measure up to the rigid exactions of the law because of that sense of fair play which dictated the rules governing the subject of equality of rates, which we have above discussed, hesitated to concede to one engaged in the public service the right to make its own violation of its ordinance contract with the city of Birmingham a justification for denying to the plaintiff the right of supplying her residence with water under the terms of an agreement which it had made with her. The demands of the rules of law which we have above extracted from our own cases, appear to be inexorable, and those rules appear to rest upon foundations which are not only unassailable, but which were adopted for the public good. In our opinion the plaintiff's contract with the defendant was void for the reasons which we have above stated, and we do not think that it can be upheld in favor of the plaintiff under the doctrines announced in 1 Page on Contracts, §§ 330-332, *Packard v. Byrd,*

73 S. C. 1, 51 S. E. 678, 6 L. R. A. (N. S.) 547, 9 Cyc. 550, and *Trentman v. Wahrenburg,* 30 Ind. App. 304, 65 N. E. 1057. In this case the parties made a contract which the policy of the law prohibited either party to the contract from making, and it is familiar doctrine that an agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel.

5. In this case there was, it is true, a dispute as to what amount the plaintiff should pay the defendant for water for her residence. This dispute grew out of the fact that the plaintiff and the defendant had made with each other a contract which was void because the law itself condemned the contract which they made. The reasoning, therefore, of the Supreme Court of Maine in *Wood v. Auburn,* 87 Me. 293, 32 Atl. 908, 29 L. R. A. 376, and of the Supreme Court of Mississippi in *Telegraph Co. v. Hobart,* 89 Miss. 252, 42 South. 349, 119 Am. St. Rep. 702, has no applicability to the facts in this case.

6. It follows, therefore, that the opinion of this court on the former appeal (*Brown v. Birmingham Waterworks Co.,* 169 Ala. 230, 52 South. 915) in so far as it conflicts with the views expressed in this opinion, is expressly overruled. It also follows that in our opinion the trial judge committed reversible error in giving to the jury at the request of the plaintiff, affirmative instructions in her behalf. In our opinion, under the evidence in this case as it is disclosed in the bill of exceptions, the defendant was entitled to affirmative instructions in its behalf.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN, SOMERVILLE and GARDNER, JJ., concur. MAYFIELD, J., not sitting. SAYRE, J., dissents.

ANDERSON, C. J.—While fully concurring in the foregoing opinion, I do not wish to be understood as approving the contract in question even if the terms and rate therein provided were uniform and applied to all of the dwellings of the city. The original ordinance contract between the waterworks and the city has been several times before this court and it was then held that said contract did not authorize a meter rate as to dwellings, and that they had to be supplied with water under a flat rate.—*Smith v. Birmingham Waterworks,* 104 Ala. 315, 16 South. 123; *Waterworks v. Mayor, etc.,* 42 South. 10. It may be that the flat rate there provided was the maximum rate, and that a lower flat rate, if uniform, would be permissible, but to my mind, a contract on a meter rate is questionable under any condition. On the other hand, if it be conceded that the company could make an uniform meter rate which would be less than the maximum flat rates as fixed by the ordinance contract, it would have to affirmatively appear from the last contract that the rate so fixed could not exceed the maximum flat rate prescribed by the ordinance contract, and which fact does not appear in the present contract, or the provision guarding against this point was improperly read into same upon the former appeal of this case.—169 Ala. 230, 52 South. 915. It may be that the sale of water by the meter rate is more equitable to all parties concerned than by the flat rate, but this court must deal with contracts as they are, and not as they might or should be.

SAYRE, J.—(Dissenting.)—I do not concur in a reversal on the ground taken in the prevailing opinion. I have not examined the record to see whether there be other ground of reversal; for, as the case has been

decided, that would be useless. I do not take issue with
all the broad generalizations of the opinion. It is to
be conceded, for example, that, in the absence of a stat-
ute controlling the subject, a public service corpor-
ation has no right to make unreasonable charges for
its services, and that, if such corporation exacts a com-
pensation in excess of that which is reasonable, the
customer may recover the excess on an indebitatus
count. Here the opinion proceeds on the notion, not
that plaintiff was required to pay too much, but that
she may have been let off with too little. Three things
are to be noted: The ordinance contract does not fix
any rate absolutely, but only a maximum beyond which
defendant could not go; there is no statute or ordi-
nance requiring uniformity, though doubtless it would
be better for convenience in administering the law in
such cases that there should be; the defendant is a
private corporation doing business primarily, it is safe
to assume, for the benefit of its stockholders. A mu-
nicipal corporation in many respects stands on the same
footing as a private corporation engaged in the same
line of business. It occurs to me, however, that there
is this difference which may be worthy of considera-
tion: That the public are quasi stockholders in any mu-
nicipal business of a private character, and its mem-
bers as such are entitled, as matter of law and right,
to uniformity of treatment. Being a private corpora-
tion, defendant solicited plaintiff to enter into a con-
tract with it. She did so. Defendant now contends,
or the opinion so holds, that, the contract being void
as against a general public policy requiring uniform-
ity, plaintiff acquired under it no rights which defend-
ant is bound to respect. I do not say she was entitled
to the contract in the beginning, though, for aught ap-
pearing, she may have been. That she could not have

required defendant to enter into the contract, assuming that she was tendered a contract unduly unfavorable to her, is all that a number of the cases cited in the prevailing opinion go to prove. I do say that neither the legal nor the moral aspects of the defendant's position with reference to the contract in question carries any appeal to my mind.

In the absence of statute or equivalent competent municipal ordinance to the contrary, mere inequality in the charges made by a public service corporation does not of itself amount to an unjust discrimination. "At the foundation of the whole matter lies the common-law rule, just and well settled, that in each particular case there should be charged a reasonable compensation, and no more."—2 Hutchinson on Carriers (3d Ed.) § 521.

This was the effect of the language used in *State ex rel. Ferguson v. Birmingham Wateworks Co.*, 164 Ala. 586, 51 South. 354, 27 L. R. A. (N. S.) 674, 137 Am. St. Rep. 69, 20 Ann. Cas. 951, though it may have been aside from the precise question there involved. The idea I find to be more clearly expressed in *Wagner v. Rock Island*, 146 Ill. 156, 34 N. E. 549, 21 L. R. A. 519, as follows: "It is a rule of the common law that parties carrying on business which is public in its nature, or which is impressed with a public interest, cannot select their patrons arbitrarily, but must serve all who apply on equal terms, and at reasonable rates, but this is as far as the rules of the common law seem to have gone. They do not require absolute uniformity of rates, nor forbid discrimination by performing the service for one at rates lower than those exacted of others. The most familiar illustration of pursuits of this character is that of a common carrier, and the well-recognized rule is, that while the carrier cannot

select his patrons arbitrarily, and must furnish equal facilities to all and on equal terms, he is not forbidden to take one customer's goods at an unreasonably low rate, or to confer on that customer other practical advantages in the transportation to which competitors and the general public are not admitted.—Schouler on Bailments and Carriers, 380; Hutchinson on Carriers, § 447. The same rule, doubtless, where no statutory restriction has intervened, is equally applicable to all other kinds of business which have become affected with a public interest, such as that ordinarily carried on by telegraph or gas companies, the construction and maintenance of public wharves, or the maintenance and operation of waterworks in cities."

This proposition is discussed and approved in Hutchinson on Carriers, ubi supra, and Schouler on Bailments and Carriers (2d Ed.), § 380, modern treatises both, where many cases, modern and ancient, American and English, are cited.

"This court can know nothing of public policy except from the Constitution and the laws, and the course of administration and decision."—*License Tax Cases.* 5 Wall. 462, 469 [18 L. Ed. 497]. "When the will of the people has become crystallized into legislative enactment, and a given subject has been surrounded by regulation, limitations, and restrictions, the courts are bound to consider them as indicating a definite policy, and to yield obedience thereto."—*Baum v. Baum,* 109 Wis. 47, 53, 85 N. W. 122, 123 (53 L. R. A. 650, 83 Am. St. Rep. 854). But here, as I have already noted, nothing is fixed by the ordinance contract except the maximum charge, and, I take it, this court would hardly hold absolutely void contracts establishing a uniform charge more favorable to the people of Birmingham. "The power to refuse to enforce a contract as

against public policy is one of limits not clearly defined and the courts prefer, in cases not settled by recognized precedence, to use such power only in clear cases. The defense of public policy is so often interposed as a last resort that the courts have become suspicious of it. There may be said to be a strong tendency at modern law to restrict the operation of public policy as avoiding contracts to cases included under recognized legal principles, or under statutes."— The foregoing sentences have been collated from 1 Page on Contracts, § 326, a modern and respectable authority, where many modern adjudicated cases are cited. Here plaintiff did no wrong, she could not be required to know what a reasonable rate would be, and defendant was giving the same rate to others. Nor, for that matter, does it appear that defendant in tendering the contract did any wrong or hurt to the public. The wrong, if any, may have been that all the citizens of Birmingham were not offered the same rate. So far as anybody knows the reduced rate, rather than the higher rate which the court has imposed on plaintiff, was the reasonable rate, and should be made the uniform rate. So, in my judgment, the contract at the bottom of plaintiff's asserted right was not void, and defendant's appeal to public policy ought not to be entertained in a court of justice.

## RESPONSE TO APPLICATION FOR REHEARING.

DE GRAFFENRIED, J.—On this application for a rehearing, it is argued that this court, in effect, has held that the water company may not voluntarily establish a uniform rate less than the maximum rate fixed by the ordinance contract referred to in the above opinion. It is also argued that this court has, in said

opinion, held, in effect, that said ordinance contract cannot be altered by legislative action taken either directly by the state or by the state acting through the city.

In the above opinion we have confined ourselves to the questions presented by the record, and we have undertaken to decide no other questions. The above points which it is claimed on this rehearing have been decided, in effect, by the above opinion, have not been before us for review, and they have not, of course, been decided by us. Those points, not being raised by this record, cannot in this case be passed upon by this court.

(2) In so far as the question which, in this case, we have determined, is concerned, we think that the true rule at common law on the subject was correctly stated by the Supreme Court of New Jersey in the following language: "The business of the common carrier is for the public, and it is his duty to serve the public indifferently. He is entitled to a reasonable compensation, but on payment of that he is bound to carry for whoever will employ him, to the extent of his ability. A private carrier can make what contract he pleases. The public have no interest in that, but a service for the public necessarily implies equal treatment in its performance, when the right to the service is common. Because the institution, so to speak, is public, every member of the community stands on an equality as to the right to its benefit, and, therefore, the carrier cannot discriminate between individuals for whom he will render the service. In the very nature, then, of his duty and of the public right, his conduct should be equal and just to all. So, also, there is involved in the *reasonableness* of his compensation the same principles. *A want of uniformity in price for the same kind*

*of service under like circumstances is most unreasonable and unjust, when the right to demand it is common.* It would be strange if, when the object of the employment is the public benefit, and the law allows no discrimination as to individual customers, but requires all to be accommodated alike to individuals, and for a reasonable rate, by the indirect means of unequal prices some could lawfully get the advantage of the accommodation and others not."—*Messenger v. Penn. R. R. Co.,* 37 N. J. Law, 531, 18 Am. Rep. 754.

To the same effect is *Fitzgerald et al. v. Grand Trunk R. Co.,* 63 Vt. 169, 22 Atl. 76, 13 L. R. A. 70. Indeed, we think that the great weight of modern authority sustains the conclusions which have been expressed by this court in the above opinion.

The application for a rehearing is overruled.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., concur. SAYRE, J., dissents. MAYFIELD, J., not sitting.